1  J. DAVID BREEMER, No. 215039
   E-mail:  jdb@pacificlegal.org
2  JENNIFER F. THOMPSON, No. 280885
   E-mail:  jft@pacificlegal.org
3  Pacific Legal Foundation
   930 G Street
4  Sacramento, California 95814
   Telephone:  (916) 419-7111
5  Facsimile:  (916) 419-7747

6  Attorneys for Plaintiffs

7

8              UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10               SAN FRANCISCO DIVISION

11

12  DANIEL LEVIN; MARIA LEVIN; PARK LANE   )   No. _____
    ASSOCIATES, L.P.; THE SAN FRANCISCO    )
13  APARTMENT ASSOCIATION; and THE         )   **COMPLAINT FOR**
    COALITION FOR BETTER HOUSING,          )   **VIOLATION OF**
                                           )   **FEDERAL CIVIL RIGHTS**
14                                         )   **UNDER 42 U.S.C. § 1983**
          Plaintiffs,                      )   **AND CALIFORNIA STATE LAW**
15                                         )   **(Cal. Gov't Code § 7060-7060.7)**
          v.                               )
16                                         )
    CITY AND COUNTY OF SAN FRANCISCO,      )   **DECLARATORY AND**
17                                         )   **INJUNCTIVE RELIEF**
          Defendant.                       )
18  _____)

19

20

21

22

23

24

25

26

27

28

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

**INTRODUCTION**

1.     Daniel and Maria Levin (Levins), Park Lane Associates, L.P. (Park Lane), the San Francisco Apartment Association (SFAA), and the Coalition for Better Housing (CBH), bring this complaint for declaratory and injunctive relief against the City and County of San Francisco (City) due to its enactment of legislation that retroactively, illegally and unconstitutionally requires rental property owners to transfer massive sums of money (more than a million dollars for the individual plaintiffs) to tenants before they can take their property off the rental market.

2.     California's Ellis Act (Ellis Act) prohibits local governments from taking action to prevent rental property owners, like Plaintiffs, from withdrawing units from the rental market. Yet, the City has recently enacted legislation (the "Ordinance") that punishes those who lawfully seek to withdraw units, by forcing them to give any displaced tenant enough money to make up the difference between the tenant's old rental rate and the amount it takes to rent, for two full years, a comparable unit at open market rates.  Given San Francisco's market, this required payment can add up to a tremendous amount; the Ordinance entitles some individual tenants to receive a hundred thousand dollars or more from the property owner before the owner can recover the property.

3.     Tenants entitled to a payment under the Ordinance are allowed to use it for any purpose; the Ordinance does not require them to use the money for rent or to relocate.  Moreover, there is no income requirement to be eligible for a payment.  Under the Ordinance, rich tenants as well as low-income ones, are entitled to an unrestricted cash payment before a property owner can take units off the rental market.  The Ordinance thus effects a blatant transfer of wealth from some private citizens to others.

4.     The Ordinance is retroactive, applying to owners, like the Levins and Park Lane, who lawfully withdrew units under the Ellis Act and the City's own procedures before enactment of the Ordinance, but those units remain physically occupied by the subject tenant.  Due to its retroactive aspect, the Ordinance requires the Levins—who withdrew a unit in order to use their property for their own purposes—to pay approximately **$117,958.89** to a single tenant who has already received all notices and benefits sufficient to complete and legalize withdrawal of a unit

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

under the pre-existing rent laws. Park Lane must now pay approximately **$1, 448, 023.98** to 15 tenants who also received all lawfully required process, notices and benefits sufficient to legalize withdrawal of approximately 15 units under pre-existing rental laws.

5.     On its face, and as applied to the Levins and Park Lane, the tenant payments mandated by the Ordinance take property for a private purpose. To the extent they serve a public purpose, the payment provisions unconstitutionally take property, unconstitutionally function as a condition that is unrelated and disproportionate to any impact arising from the withdrawal of rental units, unreasonably seize property, and impose an impermissible burden on the plaintiffs' Ellis Act and common law property rights. Consequently, the Ordinance violates the Takings Clause, Fourth Amendment and Due Process Clause of the United States Constitution, the unconstitutional conditions doctrine, and the Ellis Act. The plaintiffs are therefore entitled to equitable relief under 42 U.S.C. § 1983, the Declaratory Judgment Act and California law, including a preliminary injunction.

## THE PARTIES

6.     Plaintiffs Daniel and Maria Levin are individual citizens of the United States. They are domiciled in, and reside in, San Francisco, California. They own a two-unit building located at 471-473 Lombard Street, San Francisco, California. The Levins' building is subject to the Ordinance.

7.     Plaintiff Park Lane Associates is a Limited Partnership formed under the laws of California. Park Lane owns a 33-unit building located at 1100 Sacramento Street, San Francisco, California. Park Lane's building is subject to the Ordinance.

8.     Plaintiff San Francisco Apartment Association was founded in 1917. It is a nonprofit trade association of persons and entities who own residential rental properties in San Francisco. SFAA is dedicated to educating, advocating for, and supporting the rental housing community, and preserving the property rights of all residential rental property providers in San Francisco. SFAA currently has more than 2,800 active members, many of which are subject to the Ordinance. Some members are subject to the retroactive application of the Ordinance based on acts they have taken to withdraw units under laws predating the Ordinance. Other members

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

have considered withdrawing units, or may want to do so in the future, but are now inhibited from doing so by the Ordinance.

9.  Plaintiff Coalition for Better Housing is a nonprofit trade organization representing the owners of over 10,000 residential rental units in San Francisco, many of whom are subject to the Ordinance.  Organized in 1979, CBH works to bring a healthier real estate climate to the rental housing industry.

10.  Defendant City and County of San Francisco is a political subdivision of the State of California, and the local governing authority in San Francisco.  The City enacted the Ordinance challenged by this lawsuit.  The City is entitled to sue and be sued, and is constrained by the laws of the United States and the State of California, including the United States Constitution, 42 U.S.C. § 1983, and the Ellis Act.

## JURISDICTION AND VENUE

11.  The claims in this action arise under the Fourth and Fifth Amendment to the United States Constitution, as incorporated against the states by the Fourteenth Amendment, and the Due Process Clause of the Fourteenth Amendment.  The Court has jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1331.  A remedy is sought under the Declaratory Judgment Act, 28 U.S.C. § 2201.

12.  Venue is proper in this Court because this action concerns private property located in San Francisco, California, and a legislative enactment of the City, all of which are within the jurisdiction of the Northern District of California.

## FACTS

**The Ellis Act Procedure**

13.  The California legislature enacted the Ellis Act in1984.  It provides, in part, that no public entity may "compel the owner of any residential real property to offer, or to continue to offer, accommodations in the property for rent or lease, except for [certain] guestrooms or efficiency units within a residential hotel . . . ."  Cal. Gov't Code § 7060(a).

14.  The Ellis Act further provides that "[n]otwithstanding Section 7060, nothing in this chapter . . .  [d]iminishes or enhances any power in any public entity to mitigate any adverse

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1  impact on persons displaced by reason of the withdrawal from rent or lease of any

2  accommodations." *Id.* § 7060.1.

3       15.     Section 37.9(a)(13) of the City's Administrative Code (the Rent Code) establishes

4  a procedure for property owners to utilize their rights to withdraw units under the Ellis Act. Before

5  a property owner may evict a tenant and regain an apartment or other rental unit for non-rental

6  uses, a property owner must provide tenants with a Notice of Termination of Tenancy (Notice of

7  Termination). The Rent Code and Ellis Act also require that the owner file a Notice of Intent to

8  Withdraw Residential Units from the Rental Market (Notice of Withdrawal) with the

9  San Francisco Rent Stabilization Board (Rent Board).

10       16.     Under the Rent Code, a duly filed Notice of Termination commits a property owner

11  to the withdrawal of units.

12       17.     Rental units are withdrawn from the rental market 120 days after the filing of the

13  Notice of Withdrawal.

14       18.     However, if a tenant is at least 62 years of age or "disabled" and has lived in the

15  subject rental unit for a year or more, the tenant may postpone the withdrawal of the unit by one

16  year by giving the owner notice of the tenant's claim to an extension. A tenant can claim to be

17  disabled for purpose of the Code simply by making a claim to that effect.

18       19.     A property owner who has filed a Notice of Withdrawal must file a Memorandum

19  of Notice Regarding Withdrawal of Rental Unit From Rent or Lease with the County recorder to

20  memorialize the withdrawal of rental units. The City will subsequently file a Notice of Constraints

21  on the subject property. This process deed restricts the subject property, imposing substantial

22  limits and penalties on the property owner if the owner tries to re-rent the property. Such

23  restrictions apply to the property owner who filed the Notice of Withdrawal, and any successor in

24  interest.

25       20.     The restrictions include a requirement that if the owner tries to re-rent the unit

26  within two years of the date of withdrawal "the owner shall be liable to any tenant or lessee who

27  was displaced from the property for actual and exemplary damages." Additionally, the City may

28

institute a civil proceeding against the owner who has again offered the unit for rent or lease, for exemplary damages for displacement of tenants or lessees."

21.    If an owner tries to re-rent a withdrawn unit within five years of withdrawal, he must offer the unit at the rate in effect at the time of withdrawal.  Further, if the owner tries to re-rent within ten years of withdrawal, he must take steps to offer the unit to the tenant at the rate in effect at the time of withdrawal and can be subject to punitive damages for failing to do so.

**The 2005 Law**

22.    In February, 2005, the City enacted San Francisco Administrative Code, ch. 37, § 37.9A, subd. (e)(3) (the 2005 law).  This law amended a prior City ordinance that required landlords to make minor "relocation payments" to low income, elderly and disabled tenants displaced by a property owner's withdrawal of rental units.

23.    The 2005 law established a new tenant payment scheme for all tenants displaced by a property owner's filing of a Notice of Intent to Withdraw on or after February 20, 2005.

24.    The 2005 law provided, in pertinent part, that "[w]here a landlord seeks eviction based upon [the Ellis Act procedure] and the notice of intent to withdraw rental units is filed with the Board on or after February 20, 2005, relocation payments shall be paid to the tenants as follows:

(A)    Subject to Subsections 37.9(e)(3)(B), (C), and (D) below, each tenant shall be entitled to receive $4,500.00, one-half of which shall be paid at the time of the service of the notice of termination of tenancy, and one-half of which shall be paid when the tenant vacates the unit;

(B)    In the event there are more than three tenants in a unit, the total relocation payment shall be $13,500.00, which shall be divided equally by the number of tenants in the unit; and

(C)    Notwithstanding Subsections 37.9A(e)(3)(A) and (B), any tenant who, at the time the notice of intent to withdraw rental units is filed with the Board, is 62 years of age or older, or who is disabled within the meaning of Section 12955.3 of the California Government Code, shall be entitled to receive an additional payment of $3,000.00, $1,500.00 of which shall be paid within fifteen (15) calendar days of the landlord's receipt of written notice from the tenant of entitlement to the relocation payment, and $1,500.00 of which shall be paid when the tenant vacates the unit.

(D)    Commencing March 1, 2005, the relocation payments specified in Subsections 37.9A(e)(3)(A) and (B) and (C) shall increase annually at the rate of increase in the "rent of primary residence" expenditure category of the Consumer

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1   Price Index (CPI) for All Urban Consumers in the San Francisco-Oakland-San Jose
    Region for the preceding calendar year, as that data is made available by the United
2   States Department of Labor and published by the Board.

3   **The 2014 Ordinance**

4         25.   On June 1, 2014, the City enacted the Ordinance challenged here.  The Ordinance

5   established new tenant payment obligations for property owners invoking the Ellis Act right to

6   remove units from the rental market.  The Ordinance is attached as **Exhibit A** and its provisions

7   are incorporated herein.

8         26.   The Ordinance provides that, as of June 1, 2014, each tenant to be displaced by an

9   Ellis Act withdrawal of a rental unit shall be entitled to the "greater" of the payments required by

10  the 2005 law or

11        an amount equal to the difference between the unit's rental rate at the time the
          landlord files the notice of intent to withdraw rental units with the Board, and the
12        market rental rate for a comparable unit in San Francisco as determined by the
          Controller's Office, multiplied to cover a two-year period, and divided equally by
13        the number of tenants in the unit (the "Rental Payment Differential").

14  San Francisco Admin. Code § 37.9A(e)(3)(E)(ii).

15        27.   The Ordinance requires a withdrawing property owner to "pay one-half of the

16  Rental Payment Differential at the time of the service of the notice of termination of tenancy, and

17  the remaining one-half when the tenant vacates the unit."  *Id.*

18        28.   The Ordinance requires the City Controller to establish a San Francisco Rental

19  Payment Differential Schedule ("Schedule" to govern the calculation of the new tenant payments

20  required by the Ordinance.  The current Schedule is attached as **Exhibit B** and is hereby

21  incorporated in this complaint.

22        29.   The Ordinance provides that a displaced elderly or disabled person entitled to the

23  new "Rental Payment Differential" payment is also entitled to receive an additional sum of $3,000

24  (as adjusted annually by the CPI inflation rate).  *Id.* § 37.9A(e)(3)(C).

25        30.   The Ordinance applies retroactively to "[a]ny tenant who has received a notice

26  of termination of tenancy, but who has not yet vacated the unit by [June 1, 2014]."  *Id.*

27  § 37.9A(e)(3)(F).  Such a tenant is entitled to the new payment, reduced by any payment the tenant

28  received under the pre-existing 2005 law.

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

31.    The Ordinance allows a property owner subject to its new tenant payment obligations to apply to the Board for a reduction of his obligation based on "undue financial hardship." (Financial Hardship Reduction.)  The sole criteria for a Financial Hardship Reduction is whether a rental property owner has or lacks sufficient economic assets to make the tenant payments.

32.    A rental property owner subject to the Ordinance may seek a hearing "that the San Francisco Rental Payment Differential Schedule established in Subsection 37.9A(e)(3)(E)(ii) does not reasonably reflect the market rental rate for a comparable unit in San Francisco and would result in an overpayment by the landlord ('Rent Differential Recalculation Request')" if the owner believes that the Schedule is inaccurate.  *Id.* § 37.9A(3)(3)(H).

33.    Neither the Financial Hardship provision or provision for a Board hearing on the Payment Differential Schedule apply to the $4,500 (as adjusted annually by the CPI inflation rate) minimum (non-Rent Differential) payment required by the Ordinance.  Thus, in all events, the Ordinance requires every property owner seeking to withdraw rental units to pay at least $4,500 per tenant, subject to the $3,000 (as adjusted annually by the CPI inflation rate) increase applicable to "disabled" and elderly tenants.

34.    The Ordinance requires a property owner seeking to withdraw units to notify subject tenants of their right to receive a payment under the Ordinance.

35.    The Ordinance places no constraints on tenants' use of money paid to them by property owners subject to the Ordinance and has no mechanism for accounting for the actual use of the money.  Tenants who are paid under the Ordinance can put the money in savings, hire a lawyer to fight the withdraw of units from the rental market, put a down payment on a house or use the money to purchase a new car, among other things.

36.    The Ordinance imposes no income limitations on a tenant's eligibility for a payment.  High income, "penthouse" renters are just as eligible to receive a payment under the Ordinance as low-income persons.

///

///

**The Levins' Property**

37.     Daniel Levin is a third generation San Franciscan.  Both his grandparents were in San Francisco predating the 1906 earthquake.

38.     Daniel and Maria Levin own a small business in North Beach and have worked seven (7) days a week for the last twenty (20) years.

39.     In 2008, the Levins purchased a two-unit (top/bottom) building located at 471-473 Lombard Street, San Francisco. The lower unit, 473 Lombard Street, was occupied by a rental tenant at the time.  The Levins immediately informed that tenant that they hoped to remodel the building and use both units for themselves in the future.  The Levins subsequently moved into the top unit.

40.     The Levins do not want to be landlords. They desire to use the lower unit for their own residential purposes, including for having family and friends stay with them. Currently, there is not enough room in the upper unit for that purpose.

41.     The tenant in the bottom unit is a single, non-elderly, working and economically self-sufficient tenant who moved into the unit in 1988.  The tenant's current monthly rent is $2,479.67.

42.     The Levins initially tried to do some remodeling of the building with the tenant in the lower unit, but the tenant protested, and appealed to the City Planning Department when the Levins sought permits to do some work.  These efforts delayed the Levins' permits and forced the Levins to hire and pay attorneys.

43.     The Levins eventually concluded they could remodel and use the building as their residence only by taking the lower unit off the market under the Ellis Act.  They therefore served a Notice of Termination on the tenant and filed a Notice of Intent to Withdraw Units From the Rental Market with the Rent Board on December 16, 2013.  At that time, the Levins paid the tenant the first half of the $4,500 (adjusted annually by the CPI inflation rate) payment required by the pre-existing 2005 law.

44.     The Levins' tenant subsequently claimed "disability" for purposes of the Ordinance, and a one year extension on the withdrawal of the unit and termination of the tenancy.  The Levins

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

did not agree with this "disability" claim, but did not contest it because they calculated it would cost more to do so than to just pay the tenant the additional $3,000 disability payment (adjusted annually by the CPI inflation rate). So they made that payment, and extended the withdrawal date to December 16, 2014.

45.     Under the 2005 tenant payment law in existence when the Levins filed their Notice of Withdrawal, the Levins were required to pay the tenant a maximum of **$5,210.91**, plus an additional **$3,473.93** for her disability claim, for a total amount of **$8,684.84**.

46.     As of the date of filing of this complaint, the Levins' tenant has not vacated the unit.

47.     The Ordinance retroactively applies to the Levins' situation and now obligates them to pay the tenant **$117,958.89** before they can regain exclusive use of their unit, calculated as follows:

$2,479.67 (rent) x 1.9821 (differential index) = $4,914.953

$4,914.953 x 24 months = $117,958.89.

48.     The Levins do not contest the accuracy of the current Rent Differential Schedule governing the calculation of tenant payments under the Ordinance.

49.     The City has recorded a Notice of Constraints on the Levins' property, based on their Notice of Withdrawal, which deed restricts the Levins' ability to re-rent its units, and punishes them if they try to do so.  The Notice of Constraints is attached as **Exhibit C**.

50.     Under the City Rent Code, and recorded Notice of Constraints, the Levins cannot rescind the Notice of Withdrawal and attempt to re-rent its units (in hopes of avoiding the Ordinance's tenant payment obligations) without (1) being forced to accept the unwanted physical occupation of its property and inability to use the property for its own purposes and (2) incurring severe restrictions on their ability to rent, and potential civil penalties and damages.  S.F. Admin. Code § 37.9A(a)(1); *id.* § 37.9A(c), (d).

51.     The Ordinance immediately obligates the Levins to pay the tenant **$117,958.89**, $4,342.43 of which has already been paid to the tenant under the 2005 law.

52.     The Levins do not believe the City can or should require them to pay a tenant who received proper notice of the end of the tenancy before enactment of the Ordinance more than

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1   $100,000 dollars simply so they can regain the exclusive possession of their private property for

2   their own personal uses.

3          53.    The Levins do not qualify for a Financial Hardship reduction.

4   **The Park Lane Property**

5          54.    Park Lane owns a thirty-three (33) unit residential apartment building located at

6   1100 Sacramento Street, San Francisco, California.  In the past, Park Lane has rented the units.

7   However, at various times, it has struggled with vacancies.

8          55.    Park Lane accordingly decided to convert the building to a fractional tenancy-in-

9   common (TIC) ownership system, a common from of property ownership in San Francisco.

10          56.    To complete this change, Park Lane had to first withdraw the subject apartment

11   units from the rental market.  Park Lane planned to do so under the Ellis Act procedure.

12          57.    Before withdrawing units through the Ellis Act process, Park Lane invited most

13   tenants in its building to purchase a TIC interest in the Property, with the exclusive right to occupy

14   their unit at a below market price.  Almost all the tenants declined the offer or failed to respond.

15          58.    On October 22, 2013, Park Lane served a Notice of Termination of Tenancy on its

16   tenants pursuant to the Ellis Act and Rent Code.  At that time,15 units were vacant and 18 were

17   tenant-occupied.  The tenants of three of the occupied units subsequently purchased ownership

18   rights to the units, leaving 15 units tenant occupied.

19          59.    On October, 24, 2013, Park Lane filed a Notice of Withdrawal with the San

20   Francisco Residential Rent Board.  All tenants were served with a copy of the Notice of

21   Withdrawal.

22          60.    The 2005 law in place when Park Lane served the Notice of Termination required

23   Park Lane to give each terminated tenant a $4,500 (as increased annually by the CPI inflation rate)

24   payment, except for two units that had more than three tenants (in that case, the total payment was

25   $13,500.00, divided equally by the tenants in the unit).  The specific amount owed to each Park

26   Lane tenant under the 2005 law was $5,210,91, half of which had to be paid at the time Park Lane

27   filed the Notice of Termination.  Park Lane therefore paid a total of **$88,585.55** to its tenants at the

28   time of serving the Notice of Termination.

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

61.     At least one tenant in thirteen of the fifteen remaining tenant-occupied units claimed the right to a one year extension due to age or disability, and the additional $3,000 payment (as adjusted annually by the CPI inflation rate), allowed under the 2005 law.  Each claimant was specifically entitled to receive $3,473.93, half of which had to paid within 15 days of a tenant's extension claim.  Park Lane timely paid a total additional amount of $39,950.31 within 15 days of its tenants' extension claims.  It later paid an additional $3,473.93, for a total of **$43,424.65**.

62.     As required by the City Rent Code, Park Lane duly notified the Rent Board of its tenants' one year extension claims.

63.     Under the 2005 law in place when Park Lane filed its Notice of Termination and Notice of Withdrawal, the total amount due its tenants ("regular" payment plus disability/elderly bonuses) was **$264,020.40**.

64.     The tenants of the subject units have not vacated the units. The Ordinance retroactively applies to this situation and now requires Park Lane to pay the tenants a total of **$1,448,023.98** before Park Lane can take its units off the market.

65.     Park Lane does not contest the Rent Differential Schedule formula that calculates tenant payments for purposes of the Ordinance.

66.     The Ordinance immediately obligates Park Lane to pay the tenants the total amount due (**$1,448,023.98**) because Park Lane has already filed its Notice of Withdrawal, but the tenants have not vacated the units.

67.     The City has recorded a Notice of Constraints on Park Lane's property, based on Park Lane's Notice of Withdrawal, which restricts Park Lane's ability to continue renting its units, and punishes it if it tries to do so.  The Notice of Constraints is attached as **Exhibit D**.

68.     Under the City Rent Code, and recorded Notice of Constraints, Park Lane cannot rescind the Notice of Withdrawal so as to keep renting its units as in the past (in hopes of avoiding the Ordinance's tenant payment obligations) without (1) incurring severe restrictions on its ability to rent, and potential civil penalties and damages.  S.F. Admin. Code § 37.9A(a)(a)(1); *id.* § 37.9A(c), (d) and (2) being forced to accept the unwanted physical occupation of its property and inability to use the property for its own purposes.

69.     Park Lane's economic assets disqualify it from seeking a Financial Hardship reduction to its payment obligation.  Park Lane acknowledges it is not entitled to a reduction based on financial hardship.

70.     Park Lane does not believe the City can or should require it to pay its well-off tenants, all of whom received proper notice of the end of the tenancy before enactment of the Ordinance, more than a $1,000,000 dollars simply so it can take its privately owned building off the rental market.

## DECLARATORY RELIEF ALLEGATIONS

71.     Under the Fourth, Fifth and Fourteenth Amendment to the United States Constitution, Plaintiffs have a federal right to be free from a taking of their private property for a private purpose, and from laws that take or seize property for a public purpose, but on an unreasonable ground and without any mechanism for compensation.  Under the Due Process Clause of the Fourteenth Amendment, Plaintiffs have a right to be free from an irrational and illegitimate deprivation of their property.

72.     Under state common law and the Ellis Act, Plaintiffs have a right to withdraw their property from the rental market, and to be free of any law that unreasonably and impermissibly burdens that state law property right so as to effectively force them to remain landlords.

73.     Defendant has enacted, and is charged with enforcing, an Ordinance that retroactively and immediately takes private property for a private purpose and without a rational or a reasonable basis.  To the extent the Ordinance serves a public purpose, it takes private property without providing a mechanism for compensation.

74.     There is a justiciable controversy in this case as to whether the Ordinance violates the Fourth, Fifth and Fourteenth Amendments, and the Ellis Act, on its face and as applied to Plaintiffs Levins and Park Lane.

75.     A declaratory judgment as to whether the Ordinance unconstitutionally takes property, deprives individuals, including Plaintiffs, of their property, and/or violates the Ellis Act will clarify the legal relations between Plaintiffs and Defendant, with respect to enforcement of the Ordinance.

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

76. A declaratory judgment as to the constitutionality and legality of the Ordinance will give the parties relief from the uncertainty and insecurity giving rise to this controversy.

### INJUNCTIVE RELIEF ALLEGATIONS

77. Plaintiffs have no adequate remedy at law to address the unlawful and unconstitutional taking and deprivation of their property effected by the Ordinance and under color of state law.

78. There is a substantial likelihood that Plaintiffs will succeed on the merits of their claims that the Ordinance unconstitutionally takes and seizes private property, unconstitutionally deprives Plaintiffs of their property, and violates the Ellis Act.

79. Plaintiffs Levins and Park Lane are immediately required to make the tenant payments required by the Ordinance, or suffer the forced occupation of their property. They cannot avoid those events without judicial relief, and will suffer irreparable injury absent a preliminary injunction restraining Defendant from enforcing the Ordinance.

80. All Plaintiffs will suffer irreparable injury absent a permanent injunction restraining Defendant from enforcing the Ordinance

81. Plaintiffs' injury—the immediate, unconstitutional, and illegal taking of property for the private use of tenants—outweighs any harm the injunction might cause Defendant.

82. An injunction restraining Defendant from enforcing the confiscatory, unconstitutional and illegal Ordinance on its face and as applied to Levins and Park Lane, will not impair, but rather enhance, the public interest.

### LEGAL CLAIMS

### FIRST CLAIM

### Taking of Private Property for a Private Purpose— Facial Claim Under 42 U.S.C. § 1983, All Plaintiffs

83. Plaintiffs hereby re-allege each and every allegation contained in Paragraphs 1 through 82 as though fully set forth herein.

84. It is well established that, under the Public Use Clause of the Fifth Amendment to the Constitution, local governments may not take private property for a private purpose.

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

85.     The Ordinance requires rental property owners such as Plaintiffs to transfer money to other private persons, namely, their tenants, when the owners exercise their right to withdraw units from the rental market under the Ellis Act.

86.     The Ordinance does not place any limits or conditions on how the tenants may use the money that rental property owners such as Plaintiffs must transfer to the tenants under the Ordinance.

87.     Tenants may use the money transferred to them by rental property owners for any private purpose whatsoever.  There is no requirement that the tenants use the money for relocation or to pay rents.

88.     The Ordinance benefits private persons, not the general public.  The private benefit accruing to tenants from the Ordinance's tenant payment provisions far outweighs any conceivable incidental public benefit.

89.     The Ordinance was intended to benefit private parties.

90.     The Ordinance serves a private purpose and use and therefore violates the Public Use Clause of the Takings Clause of the Fifth Amendment.

91.     The Public Use Clause violation arising from the Ordinance is occurring under color of state law and violates 42 U.S.C. § 1983.

92.     It is not necessary for Plaintiffs to exhaust administrative remedies prior to bringing this facial Public Use claim.

93.     This facial Public Use claim is ripe for resolution in federal court at this time.

**SECOND CLAIM**

**Unconstitutional Exaction and Taking of Private Property—
Facial Claim Under 42 U.S.C. § 1983, All Parties**

94.     Plaintiffs hereby re-allege each and every allegation contained in Paragraphs 1 through 93 as though fully set forth herein.

95.     The Ordinance conditions the exercise of a state law and common law property right—a property owners' right to take property off the rental market and to regain possession of it for personal, nonrental uses—on the payment of money to tenants.

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

96.   Money is constitutionally protected property.

97.   If Defendant had simply demanded that Plaintiffs hand over their money to displaced tenants, it would be liable for a per se unconstitutional physical taking of property.

98.   Under *Nollan v. California Coastal Commission* (*Nollan*), 483 U.S. 825 (1987), *Dolan v. City of Tigard* (*Dolan*), 512 U.S. 374 (1994), and *Koontz. v. St. Johns River Water Management District* (*Koontz*), 133 S. Ct. 2586 (2013), the government may constitutionally exact money from property owners, such as Plaintiffs, as a condition of allowing the owners to exercise a property right only if:

      a.   The exaction directly mitigates a public impact directly arising from the property owners' exercise of their property right;

      b.   The exaction is roughly proportionate in both nature and degree to the public impact arising from the property owners' exercise of the property right.

99.   The tenant payment exaction imposed by the Ordinance on rental property owners withdrawing their units from the rental market, is not related to, and does not address, any impact arising from the property owners' exercise of their right to withdraw units from the rental market.

100.   The monetary exaction imposed by the Ordinance, enabling tenants to rent an open market unit for two years, and for the unrestrained use of tenants, is not proportionate in either nature or degree to any impact arising from the property owners' exercise of their right to withdraw units from the rental market.

101.   In requiring property owners such as Plaintiffs to pay unrestricted and exorbitant sums to tenants as a condition of exercising their state law property right to remove their units from the rental market, the Ordinance imposes an unconstitutional condition and unconstitutionally exacts and takes private property.

102.   The monetary exaction imposed by the Ordinance violates the constitutional principles articulated in *Nollan*, *Dolan*, and *Koontz*.

103.   The unconstitutional monetary exaction arising from the Ordinance is imposed under color of state law and violates 42 U.S.C. § 1983.

104. This claim does not seek "just compensation," but only equitable relief sufficient to restrain the enforcement of the unconstitutional monetary exaction arising from the Ordinance.

105. Plaintiff need not exhaust administrative remedies prior to bringing this claim.

106. This facial unconstitutional conditions/takings claim is ripe for immediate resolution in federal court.

**THIRD CLAIM**

**Violation of Due Process—Facial Claim Under 42 U.S.C. § 1983; All Parties**

107. Plaintiffs hereby re-allege each and every allegation contained in Paragraphs 1 through 106 as though fully set forth herein.

108. Rental property owners have a statutory and common law property right to use and enjoy their property and to remove their property from the rental market when they desire.

109. The Ordinance requires that rental property owners pay tenants enough money to cover a tenant's rent for two full years before the owners are allowed to regain possession of their property under the Ellis Act, but puts no conditions on tenants' use of the payments. Tenants need not use their payment for relocation or for rent.

110. The Ordinance is retroactive, applying to property owners, like the Levins and Park Lane, that took all legally necessary steps, and acquired a vested right, to withdraw their rental units under laws predating the Ordinance.

111. The real purpose of the Ordinance is to penalize property owners for exercising their state law property right to remove their units from the rental market and to force them to keep such units on the market.

112. The Ordinance's tenant payment provisions do not rationally advance a legitimate governmental interest and are arbitrary.

113. The retroactive nature of the Ordinance is irrational, unfair, and illegitimate.

114. The Ordinance arbitrarily, irrationally, and unfairly deprives rental property owners like Plaintiffs of their property rights.

115. The due process violation arising from the Ordinance is occurring under color of state law and violates 42 U.S.C. § 1983.

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

116.   Plaintiff need not exhaust administrative remedies prior to bringing this claim

117.   This facial due process claim is ripe for immediate resolution in federal court.

**FOURTH CLAIM**

**Violation of Ellis Act**
**(California Government Code section 7060-7060.7)—Facial Claim; All Plaintiffs**

118.   Plaintiffs hereby re-allege each and every allegation contained in Paragraphs 1 through 117 as though fully set forth herein.

119.   California Government Code Section 7060(a) and state common law prohibits local governments from acting or legislating to prevent a landlord/property owner from withdrawing rental units from the rental market.

120.   Under California state law, a local government prevents a property owner from withdrawing rental units, in violation of the Ellis Act, when it burdens the right to withdraw with unreasonable and/or excessive conditions.

121.   The Ordinance's tenant payment provisions constitute an unreasonable, excessive, and impermissible burden on a property owner's Ellis Act right to withdraw units from the rental market, and effectively prevents owners from withdrawing units, in violation of the Ellis Act.

122.   The Ordinance is not in accordance with California statutory or common law.

**FIFTH CLAIM**

**Unconstitutional Physical Taking of Private Property—**
**As Applied Claim Under 42 U.S.C. § 1983, Plaintiffs Levins and Park Lane**

123.   Plaintiffs hereby re-allege each and every allegation contained in Paragraphs 1 through 122 as though fully set forth herein.

124.   By filing its Notice of Withdrawal, and taking all other legally required steps to remove units under the legal regime existing prior to the Ordinance's enactment, the Levins and Park Lane have withdrawn their units from the rental market, as a matter of law.

125.   The Rent Code does not appear to allow the Levins or Park Lane to return to the pre-withdrawal status quo.

///

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

126.    Under the Rent Code, the Levins and Park Lane appear to be bound by their Notice of Withdrawal and the Notice of Constraints filed by the City to carry out the withdrawal of units.

127.    The Ordinance's new tenant payment obligations are retroactive and apply to the Levins and Park Lane and its remaining tenants based on the withdrawal actions the Levins and Park Lane took prior to the enactment of the Ordinance.

128.    Thus, as to Levins and Park Lane, the Ordinance's tenant payment provisions are not conditional on anything that they might do.  Instead, they categorically apply to the Levins and Park Lane due to the withdrawal actions they took prior to the Ordinance's enactment.

129.    The Ordinance functions as a straight-out governmental demand that the Levins and Park Lane give tens of thousands to hundreds of thousands of dollars to its tenants.  Alternatively, it forces Park Lane and the Levins to choose between paying the money or submitting to the physical occupation of their property.

130.    Therefore, to the extent the Ordinance serves a public purpose, it effects an unconstitutional physical taking of the Levins' and Park Lane's property.

131.    "Just compensation" damages are not the proper remedy for a regulation that seeks to physically take money, an injunction halting the taking is.  The Levins and Park Lane do not seek a damages remedy through this claim, but only declaratory and injunctive relief.

132.    The Levins and Park Lane have no state compensation remedy for this physical taking claim, and need not pursue such a remedy before bringing this claim in federal court.

### SIXTH CLAIM

**Unconstitutional Exaction/Condition and Taking of Private Property—
As Applied Claim Under 42 U.S.C. § 1983, Plaintiffs Levins and Park Lane**

133.    Plaintiffs hereby re-allege each and every allegation contained in Paragraphs 1 through 132 as fully set forth herein.

134.    The Levins and Park Lane properly filed and served a Notice of Withdrawal and Notice of Termination prior to enactment of the Ordinance.

///

///

135. The Ordinance obligates Park Lane to pay approximately **$1,448,023.98** to fifteen tenants because Park Lane seeks to take rental units off the market and recover possession of the units.

136. Under the Ordinance, six of Park Lane's tenants are due more than $100,000. One other tenant is due a payment of more than $200,000.

137. The Levins must pay their tenant **$117,958,89**.

138. The Ordinance allows the Levins' and Park Lane's tenants to use the payment owed to them under the Ordinance for any purpose.

139. The Levins' and Park Lane's financial assets disqualify them from seeking a Financial Hardship reduction from the mandated payments.

140. The Levins and Park Lane are not responsible for the housing shortage in San Francisco, and the high prices for housing; the City's policies are responsible.

141. The tenant payments mandated by the Ordinance, requiring the Levins and Park Lane to give its tenants enough money to be able to rent a unit on the open market, but allowing the tenants to use this sum for any purpose, do not address and are not related to the impact of the Levins' and Park Lane's decision to withdraw units from the rental market.

142. The individual tenant payments the Ordinance requires the Levins and Park Lane to make are not roughly proportionate in nature and degree to the impact of the Levins' and Park Lane's decision to withdraw the rental units from the rental market.

143. The total $1,448,023.98 payment the Ordinance requires Park Lane to make to its tenants in order to regain possession of its building for nonrental use is not roughly proportionate in nature and degree to the impact of Park Lane's decision to withdraw rental units from the rental market.

144. As to the Levins and Park Lane, the Ordinance's tenant payment requirements, and the sums they obligate Park Lane to pay, are final and due immediately because the Levins and Park Lane have already filed their Notice of Withdrawal, and the Ordinance retroactively applies to their situation.

///

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

145.    To the extent the Ordinance's tenant payment requirements are a condition on the Levins' and Park Lane's exercise of a property right, including their right to remove units from the rental market, the Ordinance imposes an unconstitutional condition and unconstitutionally exacts and takes the Levins' and Park Lane's private property.

146.    The monetary exaction(s) the Ordinance imposes on the Levins and Park Lane violate(s) *Nollan*, *Dolan*, and *Koontz*.

147.    By this claim, the Levins and Park Lane do not seek "just compensation," but only equitable relief sufficient to halt the enforcement of the unconstitutional monetary exaction(s) imposed by the Ordinance.

148.    The violation of the Levins' and Park Lane's constitutional rights effected by the Ordinance is occurring under color of state law and violates 42 U.S.C. § 1983.

149.    The Levins and Park Lane need not exhaust administrative or state remedies prior to bringing this claim.

150.    This unconstitutional conditions/takings claim is ripe for immediate resolution in federal court.

**SEVENTH CLAIM**

**Unconstitutional Regulatory Taking—As Applied
Claim Under 42 U.S.C. § 1983, Plaintiffs Levins and Park Lane**

151.    Plaintiffs hereby re-allege each and every allegation contained in Paragraphs 1 through 150 as though fully set forth herein.

152.    The Ordinance immediately obligates Park Lane to pay $1,448,023.98 to its remaining tenants because Park Lane has already filed a Notice of Withdrawal, and the Ordinance retroactively applies to this situation.

153.    The Ordinance immediately obligates the Levins to pay $117,958,89 to its remaining tenant because the Levins have already filed a Notice of Withdrawal, and the Ordinance retroactively applies to this situation.

///

///

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

154.    If the Ordinance does not amount to a physical taking or an unconstitutional exaction/condition as applied the Levins and Park Lane, it causes a regulatory taking as applied to those plaintiffs.

154.    The Ordinance's demand that Park Lane pay $1,448,023.98 has a severe economic impact on Park Lane.  The demand that the Levins pay $117,958,89 has a severe economic impact on the Levins.

155.    The Ordinance interferes with the Levins' and Park Lane's distinct investment-backed expectations, including their reasonable expectation they would not be subject to tenant payment obligations not in effect either when they purchased their property or filed a Notice of Withdrawal.

156.    The Ordinance requires the Levins and Park Lane to submit to either the confiscation of their money or the physical occupation of their property, and has the character of a taking as applied to the Levins and Park Lane.

157.    The Ordinance causes a taking of the Levins' and Park Lane's property under *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 124 (1978).

158.    The unconstitutional taking of the Levins and Park Lane's property arising from the Ordinance is occurring under color of state law and violates 42 U.S.C. § 1983.

### EIGHTH CLAIM

**Violation of Due Process—As Applied**
**Claim Under 42 U.S.C. § 1983, Levins and Park Lane**

159.    Plaintiffs hereby re-allege each and every allegation contained in Paragraphs 1 through 158 as though fully set forth herein.

160.    The Levins and Park Lane have a property right, under state law, to withdraw their rental units from the rental market and to use and enjoy their property.

161.    The Levins and Park Lane took all legally required steps to withdraw rental units, and terminate the tenancies related to this units, under laws pre-dating enactment of the Ordinance.

162.    The Levins and Park Lane have paid money to tenants under the tenant payment obligations existing under the law prior to the Ordnance.

163.    The Levins and Park Lane have a vested property right to withdraw units under the law pre-dating the Ordinance, and to (at most) make only those tenant payments required by the laws in existence when they filed their Notice of Withdrawal.

164.    The Ordinance retroactively and massively increases the Levins' and Park Lane's monetary liability to its tenants for actions it took prior to enactment of the Ordinance.

165.    The Ordinance eviscerates the Levins' and Park Lane's vested right to take their units off the rental market, and to regain possession of the units, under the Ellis Act procedures that existed prior to the Ordinance's enactment.

166.    The Ordinance arbitrarily, irrationally, and illegitimately deprives the Levins and Park Lane of a protected property right.

167.    The violation of the Levins' and Park Lane's due process rights occurring under the Ordinance arises under color of state law and violates 42 U.S.C. § 1983.

### NINTH CLAIM

**Unreasonable Seizure in Violation of the Fourth Amendment—**
**As Applied Claim Under 42 U.S.C. § 1983, Levins and Park Lane**

168.    Plaintiffs hereby re-allege each and every allegation contained in Paragraphs 1 through 167 as though fully set forth herein.

169.    The Ordinance requires that the Levins and Park Lane pay their tenants enough money to cover their rent for two full years before it may regain possession of its property for its own, nonrental uses.

170.    The Ordinance requires Park Lane to pay its tenants a total of $1,448,023.98.

171.    The Ordinance requires the Levins to pay $117,958,89 to a single tenant.

172.    The Ordinance puts no conditions on the Levins' or Park Lane's tenants' use of the payments.  Their tenants need not use their payment for relocation or for rent.

173.    The Ordinance is retroactive, obligating Park Lane to make a $1,448,023.98 tenant payment, and the Levins to pay $117,958,89, based on acts they took before the law ever required such a payment.

///

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

174. The Levins and Park Lane cannot rescind their Notice of Withdrawal to avoid the Ordinance's retroactive tenant payment mandates without incurring severe property restrictions and potential damages and civil penalties imposed on them under the Rent Code and Notice of Constraints already recorded by the City.

175. The Fourth Amendment applies in the civil context.

176. Money is protected from unreasonable seizure by the Fourth Amendment.

177. The Ordinance meaningfully interferes with the Levins' and Park Lane's posessory interests in their property, including its money and real property.

178. The Ordinance's tenant payment provisions unreasonably seize the Levins' and Park Lane's property.

179. The unreasonable seizure arising from the Ordinance is occurring under color of state law and violates 42 U.S.C. § 1983.

180. Plaintiff need not exhaust administrative remedies prior to bringing this claim.

181. This Fourth Amendment claim is ripe for immediate resolution in federal court.

## TENTH CLAIM

### Violation of the Ellis Act (California Government Code § 7060-7060.7)— As Applied to Plaintiffs Levins and Park Lane

182. Plaintiffs hereby re-allege each and every allegation contained in Paragraphs 1 through 181 as though fully set forth herein.

183. California Government Code Section 7060(a) prohibits local governments from acting or legislating to prevent a landlord/property owner from withdrawing rental units from the rental market.

184. Under California state law, a local government prevents a property owner from withdrawing rental units, in violation of the Ellis Act, when it burdens the right to withdraw the unit with unreasonable and/or excessive conditions.

185. The Ordinance's tenant payment provisions constitute an unreasonable, excessive, and impermissible burden on the Levins' and Park Lane's Ellis Act right to withdraw units from

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

the rental market, and effectively prevents them from withdrawing units, in violation of the Ellis Act.

186.    The Ordinance is not in accordance with California law as applied to the Levins and Park Lane.

## RELIEF SOUGHT

WHEREFORE, Plaintiffs pray for judgment from this Court as follows:

1.    A declaratory judgment that the Ordinance violates the Public Use Clause of the Fifth Amendment on its face and is therefore invalid and unenforceable;

2.    A declaratory judgment that the Ordinance violates the Takings Clause of the Fifth Amendment on its face and is therefore invalid and unenforceable;

3.    A declaratory judgment that the Ordinance violates *Nollan*, *Dolan*, and *Koontz* and the Unconstitutional Conditions doctrine on its face, and is therefore invalid and unenforceable;

4.    A declaratory judgment that the Ordinance violates the Due Process Clause of the Fourteenth Amendment on its face and is therefore invalid and unenforceable;

5.    A declaratory judgment that the Ordinance violates the Ellis Act on its face and is therefore invalid and unenforceable;

6.    A declaratory judgment that the Ordinance violates *Nollan*, *Dolan*, and *Koontz* and the Unconstitutional Conditions doctrine as applied to the Levins and Park Lane, and is therefore invalid and unenforceable against those Plaintiffs;

7.    A declaratory judgment that the Ordinance violates the Takings Clause as applied to the Levins and Park Lane, and is therefore invalid and unenforceable against those Plaintiffs;

8.    A declaratory judgment that the Ordinance violates the Fourth Amendment as applied to the Levins and Park Lane, and is therefore invalid and unenforceable against those Plaintiffs;

9.    A declaratory judgment that the Ordinance violates the Ellis Act as applied to the Levins and Park Lane, and is therefore invalid and unenforceable against those Plaintiffs;

///

///

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

10.     A preliminary prohibitory injunction preventing Defendants from enforcing or taking further action to enforce the Ordinance on its face and as applied to the Levins and Park Lane;

11.     A permanent prohibitory injunction preventing Defendant from enforcing or taking further action to enforce the Ordinance on its face and as applied to the Levins and Park Lane;

12.     An award to Plaintiffs of reasonable attorneys' fees and expert fees for bringing and maintaining this action, including under 42 U.S.C. § 1988;

13.     An award to Plaintiffs of costs of suit pursuant to Federal Rule of Civil Procedure 54(d); and

14.     An award to Plaintiffs of any other and further relief that the Court deems just and proper under the circumstances of this case.

DATED:  July 24, 2014.

Respectfully submitted,

J. DAVID BREEMER
JENNIFER F. THOMPSON


By ____/s/ J. David Breemer____
          J. DAVID BREEMER

Attorneys for Plaintiffs

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747