J. DAVID BREEMER, No. 215039
E-mail: jdb@pacificlegal.org
JENNIFER F. THOMPSON, No. 280885
E-mail: jft@pacificlegal.org
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DANIEL LEVIN; MARIA LEVIN; PARK LANE ASSOCIATES, L.P.; THE SAN FRANCISCO APARTMENT ASSOCIATION; and THE COALITION FOR BETTER HOUSING,<br><br>Plaintiffs,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>Defendant. | No. 3:14-CV-03352-CRB<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>Judge: Hon. Charles R. Breyer<br>Courtroom 6, 17th Floor<br>Date: August 22, 2014<br>Time: 10:00 a.m. |

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

REPLY TO THE CITY'S STATEMENT OF "FACTS" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.   The City's Objection to "Ellis Act Profits" Is
an Irrelevant Complaint About the Legislature . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.   The City Fails to Accurately Portray the Levins' Situation . . . . . . . . . . . . . . . . . . 2

    C.   Park Lane's Constitutional Rights Do Not Depend on Its Financial Status . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.   PLAINTIFFS HAVE PROPERLY SOUGHT INJUNCTIVE RELIEF, THEIR
TAKINGS CLAIMS ARE RIPE WITHOUT RESPECT TO STATE COURT
DAMAGES PROCEEDINGS, AND TENANTS NEED NOT BE JOINED . . . . . . . . . 4

    A.   Injunctive Relief Is Proper To Address a Money Demand Taking . . . . . . . . . . . . . 4

    B.   Plaintiffs' Takings Claims Are Categorically Exempt from *Williamson
County*; Alternatively, Prudential Concerns Warrant Review . . . . . . . . . . . . . . . . 5

    C.   The Tenants Are Not Necessary Parties to This Suit . . . . . . . . . . . . . . . . . . . . . . . 6

II.   THE CITY MISREPRESENTS OR IGNORES
TAKINGS AND UNCONSTITUTIONAL CONDITIONS
LAW THAT SUPPORTS PLAINTIFFS' CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    A.   The City's Reliance on Generalized Rent
Control Law Is Bizarre and Unsupported . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B.   Under Pre-*Koontz* Precedent, the City's Demand for
Plaintiffs' Money Categorically Takes Plaintiffs' Property . . . . . . . . . . . . . . . . . . 8

        1.   Pre-*Koontz* Law Treats a Money Demand as a Per Se Taking . . . . . . . . . . . 8

        2.   The Money Demanded from Plaintiffs Is Protected Property . . . . . . . . . . . 10

    C.   The City Fails to Correctly Apply the *Dolan* Test . . . . . . . . . . . . . . . . . . . . . . . . 10

    D.   The Ordinance Does Not Rationally Advance a Public Purpose When
It Gives Money to Tenants for Their Unrestricted Private Use . . . . . . . . . . . . . . 11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

# TABLE OF AUTHORITIES

Page

**Cases**

*Armstrong v. United States*, 364 U.S. 40 (1960) ........................................... 9

*Asociacion De Subscripcion Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza*, 484 F.3d 1 (1st Cir. 2007) ........................... 4

*BMW of N. Am., Inc. v. Gore*, 517 U.S. 559 (1996) ....................................... 3

*Brown v. Legal Found. of Wash.*, 538 U.S. 216 (2003) .......................... 4, 8-10

*Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262 (5th Cir. 2012) .............. 4

*Disabled Rights Action Comm. v. Las Vegas Events*, 375 F.3d 861 (9th Cir. 2004) ......... 6

*Dolan v. City of Tigard*, 512 U.S. 374 (1994) ........................................... 11

*Eastern Enters. v. Apfel*, 524 U.S. 498 (1998) ..................................... 4-5, 10

*Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229 (1984) ....................................... 4

*Horne v. U.S. Dep't of Agric.*, 750 F.3d 1128 (9th Cir. 2014) ........................... 9

*Kelo v. City of New London, Conn.*, 545 U.S. 469 (2005) ............................ 11-12

*Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470 (1987) .................. 10

*Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586 (2013) ................ 8-10

*Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982) ................. 10-11

*Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992) .................................. 10

*MacDonald, Sommer & Frates v. Yolo Cnty.*, 477 U.S. 340 (1986) ....................... 5-6

*Makah Indian Tribe v. Verity*, 910 F.2d 555 (9th Cir. 1990) ............................ 6

*McIntyre v. Bayer*, 339 F.3d 1097 (9th Cir. 2003) ....................................... 9

*McLaughlin v. Int'l Ass'n of Machinists*, 847 F.2d 620 (9th Cir. 1988) ................. 6

*N. Alaska Envtl. Ctr. v. Hodel*, 803 F.2d 466 (9th Cir. 1986) .......................... 6

*Nash v. City of Santa Monica*, 37 Cal. 3d 97 (1984) .................................... 2

*Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496 (1982) ................................... 5

*Philip Morris USA v. Williams*, 549 U.S. 346 (2007) .................................... 3

*Phillips v. Wash. Legal Found.*, 524 U.S. 156 (1998) ................................... 9

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

| | Page |
|---|---|
| *Pieri v. City & Cnty. of San Francisco*, 137 Cal. App. 4th 886 (2006) | 12 |
| *San Remo Hotel, L.P. v. City & Cnty. of San Francisco*, 545 U.S. 323 (2005) | 5 |
| *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) | 3 |
| *Sw. Ctr. for Biological Diversity v. Babbitt*, 150 F.3d 1152 (9th Cir. 1998) | 6 |
| *Taylor v. Westly*, 402 F.3d 924 (9th Cir. 2005) | 4 |
| *Town of Nags Head v. Toloczko*, 728 F.3d 391 (4th Cir. 2013) | 6 |
| *Ward v. Ryan*, 623 F.3d 807 (9th Cir. 2010) | 4 |
| *Wash. Legal Found. v. Legal Found. of Wash.*, 271 F.3d 835 (9th Cir. 2001) | 4, 8 |
| *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155 (1980) | 8 |
| *Wichita & Affiliated Tribes of Okla. v. Hodel*, 788 F.2d 765 (D.C. Cir. 1986) | 6 |
| *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985) | 1 |
| *Yee v. City of Escondido*, 503 U.S. 519 (1992) | 5, 8 |

**Statute**

| | |
|---|---|
| S.F. Admin. Code § 37.9A(e)(3)(G)(i) | 3 |

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111  FAX (916) 419-7747

# INTRODUCTION

Defendant City and County of San Francisco (City) seeks to recast an Ordinance that requires Daniel and Maria Levin (Levins) and Park Lane Associates, L.P. (Park Lane) (together, Plaintiffs) to pay hundreds of thousands of dollars to tenants before they can retire from the landlord business as an unremarkable rent control law. But it is hardly that. The Ordinance retroactively charges rental property owners like the Levins outrageous sums of money before they can exercise their state (Ellis Act) and federal right to exclusively enjoy their property. It transfers the money to tenants who live in an expensive area subject to the Ellis Act since the 1980's, for their personal use.

There is no doubt that the Ordinance immediately applies to Plaintiffs, and the City concedes that it forces Plaintiffs to choose between making $100,000+ tenant payments or submitting to the continued occupancy of their property—and loss of the right to exclude others from the property. The City's main objections to Plaintiffs' request for preliminary relief are thus procedural in nature. But the objections have no merit. Plaintiffs' request for equitable relief from a violation of their constitutional rights is proper, and their claims are ripe—either because they are exempt from the state court requirement of *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 192-94 (1985), or because prudential efficiency and fairness concerns warrant federal review now. Finally, tenants need not be joined to this suit because they are not necessary parties.

On the merits of the suit, the City ignores or distorts the precedent supporting Plaintiffs, particularly precedent that applies a per se takings test for demands for money related to ownership of property. The precedent establishes that Plaintiffs are likely to prevail on all or some of their claims, and that they will suffer irreparable constitutional harm, either through an unconstitutional confiscation of their money or their real property, if the Court does not issue a preliminary injunction.

**REPLY TO THE CITY'S STATEMENT OF "FACTS"**

To minimize the burden imposed by the Ordinance's tenant payment demand, the City levels certain factual allegations about profits that Plaintiffs and property owners in general might

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

Pl.s' Reply Mem. in Supp. of TRO & Prelim. Inj.
No. 3:14-CV-03352-CRB        - 1 -

1 realize when invoking the Ellis Act. But these allegations are improper, irrelevant, and just plain
2 wrong.

### A. The City's Objection to "Ellis Act Profits" Is an Irrelevant Complaint About the Legislature

The City clearly has a problem with the fact that private property can increase in value when it is taken off the rental market under the Ellis Act. Opp. at 2-3. Of course, as the City admits, the "highly regulated nature of the landlord business in San Francisco" creates the higher values for property released from the rental market (as opposed to those in that market). Opp. at 2. It is odd for the City to criticize disparities in rental/non-rental property values when its own regulations helped create the disparity.

Ultimately, the City's complaint against "Ellis Act profits" is simply an objection to the Ellis Act. After all, the legislature knew when it passed the Ellis Act that property taken off the rental market and put to non-rental uses might increase in value.[1] And yet, the legislature still considered an owner's right to go out of the landlord business to be supreme to local government's desire to keep property in the rental business for the benefit of tenants. And therein lies the City's real bone of contention: it does not like the Ellis Act. But the remedy for that complaint lies with the legislature, not with individual property owners like the Levins and Park Lane who are simply exercising rights which the state legislature recognized and protected when enacting the Act.

### B. The City Fails to Accurately Portray the Levins' Situation

The City recognizes that the Levins must pay more than $117,000 to a single tenant to take exclusive use of their one-bedroom lower unit. It then implies they should have sought an administrative "undue financial hardship" reduction—while at same time alleging that the Levins' property has increased in value by about two and half million dollars. Opp. at 5.

---

[1] The Ellis Act was a direct response to the California Supreme Court's decision in *Nash v. City of Santa Monica*, 37 Cal. 3d 97 (1984). In *Nash*, a property owner sought to evict tenants and tear down an apartment building to "allow the land to appreciate in value." *Id.* at 101. The court upheld the City of Santa Monica's refusal to permit the removal of the apartment building, but the state legislature subsequently passed the Ellis Act to overrule *Nash* and to allow property owners aspiring to put their property to usually more valuable non-rental uses to go out of the rental business.

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1       The truth is that the Levins are financially able to make the payment to their tenant when 2 taking into account all the "resources available" to them, including their real property values, as 3 the Ordinance requires. S.F. Admin. Code § 37.9A(e)(3)(G)(i). That is why they do not qualify 4 for undue financial hardship relief. However, as a matter of practical reality, the Levins must find 5 *cash* for the payment from somewhere. They will likely have to move money from funds slated 6 for retirement to cover the payment.

7 **C. Park Lane's Constitutional Rights Do Not Depend on Its Financial Status**

8       The City's treatment of Park Lane is rife with references to unverified news reports alleging 9 that Park Lane stands to make a large profit by removing its property from the rental market. The 10 point of this is unclear. However, the City appears to be suggesting that Park Lane enjoys less 11 constitutional protection against a taking of its property due to its potential to make a profit in the 12 end. This is untrue, of course. Constitutional rights do not wax or wane based on the wealth of 13 the plaintiff. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 427 (2003) ("The wealth 14 of a defendant cannot justify an otherwise unconstitutional punitive damages award."); *BMW of* 15 *N. Am. v. Gore*, 517 U.S. 559, 585 (1996) ("The fact that BMW is a large corporation rather than 16 an impecunious individual does not diminish its entitlement to [constitutionally mandated] fair 17 notice of the demands that the several States impose on the conduct of its business.").

18       Park Lane's financial status has no bearing on the constitutionality of the tenant payment 19 demands levied on it by the Ordinance. *See id.*; *see also Philip Morris USA v. Williams*, 549 U.S. 20 346 (2007) (punitive damages award held to be an unconstitutional taking of corporation's 21 property). The only reason that Park Lane's assets matter here is that they preclude Park Lane 22 from seeking an administrative "undue financial hardship" reduction from the Ordinance's 23 requirements. The City apparently recognizes this, as it declines to argue that Park Lane qualifies 24 for such relief.

25 ///

26 ///

27 ///

28 ///

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

# ARGUMENT

## I

### PLAINTIFFS HAVE PROPERLY SOUGHT INJUNCTIVE RELIEF, THEIR TAKINGS CLAIMS ARE RIPE WITHOUT RESPECT TO STATE COURT DAMAGES PROCEEDINGS, AND TENANTS NEED NOT BE JOINED

**A. Injunctive Relief Is Proper To Address a Money Demand Taking**

The City does not dispute that Plaintiffs may seek a declaration and an injunction to remedy the violation of rights under the Fourth Amendment, Due Process Clause, and Ellis Act. It also does not object to Plaintiffs' request for injunctive relief as a remedy for their Public Use takings claim, with good reason. *See Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 235 (1984). But it does argue that Plaintiffs cannot request an injunction in connection with their takings claims. Opp. at 1, 18-19. The City's objection misses the mark because it hinges on inapposite "denial of development" regulatory takings cases while ignoring on-point money takings cases that permit injunctive relief.

For instance, in *Eastern Enters. v. Apfel*, 524 U.S. 498, 520 (1998), and *Brown v. Legal Found. of Wash.*, 538 U.S. 216, 228-29 (2003), plaintiffs challenged as a taking a governmental requirement that they transfer a discreet fund of money to a class of individuals. Plaintiffs in both cases asked for injunctive relief, *id.*, and in both cases, the Court allowed the request. *Eastern Enters.*, 524 U.S. at 521; *Brown*, 538 U.S. at 228-29. The Ninth Circuit has been equally willing to entertain takings claims for injunctive relief when the claim deals with a taking of money. *See Wash. Legal Found. v. Legal Found. of Wash.*, 271 F.3d 835, 846 (9th Cir. 2001) (en banc); *Taylor v. Westly*, 402 F.3d 924, 935-36 (9th Cir. 2005); *Ward v. Ryan*, 623 F.3d 807, 810 (9th Cir. 2010). Other federal courts have followed the same course. *Asociacion De Subscripcion Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza*, 484 F.3d 1, 12, 19-20 (1st Cir. 2007); *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262 (5th Cir. 2012).

It is these cases, rather than cases that deal with retrospective land use takings claims, that control here. As *Eastern Enters.* explains, when a law takes a discreet fund of money, but the transfer of money away from its owner has not yet occurred, a suit for compensation is "not

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1 available," and therefore, a request for an injunction is proper. *Eastern Enters.*, 524 U.S. at 520.

### B. Plaintiffs' Takings Claims Are Categorically Exempt from *Williamson County*; Alternatively, Prudential Concerns Warrant Review

The City raises a ripeness challenge to some of Plaintiffs' takings claims under *Williamson Cnty.*, claiming Plaintiffs had to seek monetary compensation in state court before resorting to federal court.[2] The City does not, however, claim that Plaintiffs' Public Use takings claim is unripe under *Williamson Cnty.*, Opp. at 8. Nor does it claim that Plaintiffs' Fourth Amendment and Due Process Claim are subject to *Williamson Cnty.*'s "just compensation" takings ripeness rule. The City further agrees that *Williamson Cnty.* is now a discretionary, prudential ripeness doctrine. Opp. at 7.

The City argues only that the Court should decline to adjudicate Plaintiffs' physical takings claim, regulatory takings claim, and unconstitutional conditions claim until Plaintiffs seek compensation in state court pursuant to *Williamson Cnty*. *Id.* It is mistaken. As Plaintiffs' opening memorandum demonstrates, takings claimants seeking equitable relief from a taking of a money tied to real property may sue in federal court without first seeking damages in another court. Pls.' Mem. of P. & A. at 12. More generally, claimants that raise taking claims that seek relief other than money damages need not resort to state court for such damages before litigating their claims in state court. *Yee v. City of Escondido*, 503 U.S. 519, 534 (1992). The City disagrees, but provides no rebuttal to Plaintiffs' authority.

Plaintiffs' takings claims are wholly exempt from *Williamson Cnty*. But even if this were not true, it would still be appropriate for the Court to use its prudential discretion to immediately hear those claims, along with the non-takings claims. After all, a primary prudential concern is the avoidance of inefficient, piecemeal litigation. *San Remo Hotel, L.P. v. City & Cnty. of San Francisco*, 545 U.S. 323, 346 (2005); *MacDonald, Sommer & Frates v. Yolo Cnty.*, 477 U.S. 340,

---

[2] The City does not claim that Plaintiffs' claims are unripe under *Williamson Cnty.*'s first "final decision" ripeness prong. The City does mention exhaustion of administrative remedies, without directly claiming Plaintiffs were required to exhaust such remedies. In any event, it is settled that a 42 U.S.C. § 1983 claimant need *not* exhaust administrative remedies. *Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 516 (1982).

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

350 n.7 (1986). The City concedes that at least three of Plaintiffs' constitutional property rights claims will be litigated in this forum. As a matter of judicial economy and fairness, the Court should consider all the claims together. *Town of Nags Head v. Toloczko*, 728 F.3d 391, 399 (4th Cir. 2013) ("This is a proper case to exercise our discretion to suspend the state-litigation requirement of *Williamson Cnty*. In the interests of fairness and judicial economy, we will not impose further rounds of litigation on the [plaintiffs].").

**C. The Tenants Are Not Necessary Parties to This Suit**

The City argues that Plaintiffs' tenants should be joined to this lawsuit, but it cannot bear its burden to show they are necessary parties. An absent party is necessary for purposes of Fed. R. Civ. P. 19, if that party has a legally protected interest in the suit. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990). The interest must be more than a financial stake. *Id.* (citing *N. Alaska Envtl. Ctr. v. Hodel*, 803 F.2d 466, 468 (9th Cir. 1986). It also must entail more than speculation about a future event. *Id.* (citing *McLaughlin v. Int'l Ass'n of Machinists*, 847 F.2d 620, 621 (9th Cir. 1988)). If a legally protected interest exists, the party seeking joinder must show that the interest will be impaired as a practical matter if the suit proceeds. Impairment is unlikely if the absent party is adequately represented in the suit. *Makah*, 910 F.2d at 558 (citing *Wichita & Affiliated Tribes of Okla. v. Hodel*, 788 F.2d 765, 774 (D.C. Cir. 1986)).

Here, tenants do not have a legally protected interest in the purely financial windfall the Ordinance attempts to give them at the expense of property owners, and the City has cited no authority to the contrary. Moreover, until the constitutionality of the Ordinance is determined, the tenants' financial interest is speculative. Finally, even if the tenants had a non-financial, legal interest in the suit, their interest is more than adequately represented by the City Attorneys. *Sw. Ctr. for Biological Diversity v. Babbitt*, 150 F.3d 1152, 1153-55 (9th Cir. 1998). The tenants' ability to protect their interest is accordingly not impeded as a practical matter by prosecution of this suit. *Id.* The tenants are not a necessary party to this suit and need not be joined. *Id.*; *see also Disabled Rights Action Comm. v. Las Vegas Events*, 375 F.3d 861 (9th Cir. 2004).

///

///

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

## II

## THE CITY MISREPRESENTS OR IGNORES
## TAKINGS AND UNCONSTITUTIONAL CONDITIONS
## LAW THAT SUPPORTS PLAINTIFFS' CLAIMS

The City contends Plaintiffs have little chance of success on the merits of their claims. It is wrong.

### A. The City's Reliance on Generalized Rent Control Law Is Bizarre and Unsupported

At the outset of the City's discussion of the merits of Plaintiffs' takings claims, it makes a strange argument. It contends that the Ordinance's demand that rental property owners pay hundreds of thousands of dollars to their tenants before they can take exclusive possession of their property cannot cause a taking because the demand is less onerous than rent control in general, which the City claims is constitutional. Opp. at 8. Putting other objections aside for the moment, the argument is baseless because it is not predicated on any known authority. The City does not identify a standard, case, or even a law review article undergirding its novel theory that a law demanding a huge cash payment to tenants before a property owner can go out of the rental business is per se constitutional simply because some courts have upheld general rent (price) regulation.

Nevertheless, the predicates behind the City's logic are false, and a brief examination of those predicates illustrate the constitutional injuries presented by the Ordinance. The City says that Plaintiffs have two choices under the Ordinance: (1) "[t]heir first choice is to keep the status quo, and refrain from using the Ellis Act to evict all their tenants, but continue to charge their tenants less than fair market rent for their units," or (2) they can "exercise their Ellis Act rights, pay two years' worth of Monthly Rent Differentials, and recover possession of their units." Opp. at 8. In other words, the City agrees with Plaintiffs that the Ordinance requires them to submit to the unwanted physical occupancy of their property, Opp. at 15 ("requiring Plaintiffs to continue to rent their units is lawful"), or make large cash payments to tenants who can then use their landlord's money for any private purpose.

///

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

The City makes its creative assertion that the second—tenant payment—option is constitutional after concluding that the first "status quo" option is constitutional and less onerous. Opp. at 8-9, 15. But the premise is false. Rent control laws may be constitutional *if* they do not compel property owners to remain in the rental business. *Yee*, 503 U.S. at 528, 539. But they are unconstitutional if they compel an owner to rent and, thus, to forfeit possession and control of their property. *Id.* And that is exactly what the "status quo" option does: it is a compelled and unconstitutional, physical occupation option. Whether it is "less onerous" than the tenant payment option is debatable, but ultimately, irrelevant. What matters is that the "status quo" occupation scenario is unconstitutional. Accordingly, it cannot be used to justify the tenant payment option. Indeed, as shown more fully below, that option is also unconstitutional.

**B. Under Pre-*Koontz* Precedent, the City's Demand for Plaintiffs' Money Categorically Takes Plaintiffs' Property**

**1. Pre-*Koontz* Law Treats a Money Demand as a Per Se Taking**

The City wrongly contends that a per se takings analysis is inapplicable to the Ordinance's tenant payment requirement. In so doing, the City rejects Plaintiffs' contrary argument—that a per se takings test *does* apply—as a position based solely on *Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586 (2013). But this is not true. Plaintiffs rely largely on pre-*Koontz* decisions, such as *Brown*, 538 U.S. at 235, and *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 164 (1980), which treat laws confiscating discreet monetary sums as per se takings. In *Brown*, the Court adopted a "per se" takings analysis for a takings claim based on the transfer of monetary interest from one party to another, concluding that "the transfer of the interest . . . seems more akin to the occupation [and physical taking] of a small amount of rooftop space in *Loretto*." *Brown*, 538 U.S. at 235.[3] Strangely, the City completely fails to address this precedent.

---

[3] Interestingly, the City quotes the Ninth Circuit's *Wash. Legal Found.* decision for the proposition that " 'the per se analysis . . . is a particularly inapt analysis when the property in question is money,'" Opp. at 12 (quoting *Wash. Legal Found. v. Legal Found. of Wash.*, 271 F.3d at 854 (en banc). Yet, it fails to note that the Supreme Court *rejected* the Ninth Circuit's view on the proper standard upon granting certiorari in *Brown*. *Brown* adopted the opposing view—that (continued...)

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1    *Koontz* is relevant because it confirms the pre-existing per se standard for money takings
2 tied to real property. For instance, *Koontz* favorably quoted *Brown* for the "proposition that when
3 the government commands the relinquishment of funds linked to a specific, identifiable property
4 interest such as a bank account or parcel of real property, a '*per se* [takings] approach' is the
5 proper mode of analysis." *Koontz*, 133 S. Ct at 2600 (quoting *Brown*, 538 U.S. at 235). Further,
6 the *Koontz* Court described *Webb's* and *Phillips v. Wash. Legal Found.*, 524 U.S. 156 (1998), the
7 precursor to *Brown*, as "two earlier cases in which we treated confiscations of money as takings."
8 *Koontz*, 133 S. Ct. at 2601. Thus, in arguing that *Koontz* did not re-write general takings law, the
9 City wrong assumes that the pre-*Koontz* framework did not treat money takings as a per se taking.
10 It did.

11   If there was any remaining doubt as to whether a per se takings approach governs the
12 Ordinance's tenant payment demand, it is dispelled by cases holding that liens on private property
13 are per se takings. *See, e.g.*, *Armstrong v. United States*, 364 U.S. 40, 44-49 (1960). The tenant
14 payment demand is akin to a lien, a right to money secured by property, and is a per se taking like
15 a lien taking. *Id.*

16   The Ninth Circuit's recent decision in *Horne v. U.S. Dep't of Agric.*, 750 F.3d 1128 (9th
17 Cir. 2014), on remand from the Supreme Court, does not change the foregoing conclusion. The
18 appellate court's *Horne* opinion did not and could not override the Supreme Court's own per se
19 money takings analysis in *Brown*, *Phillips*, and *Webb's*. *See McIntyre v. Bayer*, 339 F.3d 1097,
20 1101 (9th Cir. 2003) (following *Brown* in concluding that a taking of a discreet amount of money
21 is subject to per se takings analysis). In any event, the *Horne* plaintiffs are currently petitioning
22 the Supreme Court to review the Ninth Circuit's decision in *Horne* for the second time,[4] so *Horne*
23 is not final.

---

[3] (...continued)
"a *per se* approach" *is* the proper way of gauging a taking of a discreet amount of money. *Brown*, 538 U.S. at 235.

[4] The Court previously reversed the Ninth Circuit's first decision in *Horne* on a 9-0 vote. *Horne v. Dep't of Agric.*, 133 S. Ct. 2053 (2013).

1   The bottom line is that the City believes the government can just order people to transfer
2   their money to others in connection with their ownership of property, or be forced to serve as
3   landlords without takings liability. But all the authority refutes this. Plaintiffs are likely to prevail
4   on their takings claims.

5   **2.   The Money Demanded from Plaintiffs Is Protected Property**

6   As a last gasp defense against Plaintiffs' takings claims, the City makes a vague argument
7   that the money demanded by the Ordinance is not the correct property interest for takings analysis.
8   The City seems to think that the demanded money must be aggregated with Plaintiffs' real property
9   before a court can apply takings law. Opp. at 12. This is also error. The idea of aggregating
10  property interests prior to applying takings standards is potentially relevant only when a landowner
11  challenges a *restriction on the developmental use of real property*, asserting it has caused a
12  regulatory taking by reducing the value of the regulated land. *Lucas v. S.C. Coastal Council*, 505
13  U.S. 1003, 1016 n.7 (1992); *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 497-
14  501 (1987).

15  When property is subject to a physical taking, as here, the property taken (no matter how
16  small) is subject to (per se) takings analysis, without respect to other property interests. *Lucas*, 505
17  U.S. at 1015; *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 434, 436 (1982).
18  Further, the aggregation principle has never been applied in the money takings context; instead,
19  takings law applies directly to the specific money being taken. *Brown*, 538 U.S. at 235, *Koontz*,
20  133 S. Ct. at 2600-01; *Eastern Enters.*, 524 U.S. at 540 (Kennedy, J., concurring).

21  **C.   The City Fails to Correctly Apply the *Dolan* Test**

22  Plaintiffs have argued that they will prevail on their unconstitutional conditions claim if
23  the Court concludes that Plaintiffs are unlikely to prevail on their traditional takings claims. The
24  City disagrees, but its position rests on a faulty application of the *Dolan* "roughly proportionate"
25  test.[5]

26  ///

---

[5] Plaintiffs disagree with the City's *Nollan* analysis as well, because it fails to account for tenants'
28  unrestricted ability to use the payment for non-rental purposes.

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1    The City argues the tenant payment requirement is proportionate because "it compensates
2 the tenant for the difference between the tenant's current regulated rent and market rent." Opp.
3 at 15-16. But this does not go to proportionality, because it does not gauge whether the nature and
4 degree of the payment is sufficiently tailored to Plaintiffs' withdrawal of their properties. More
5 particularly, the assertion does not account for the fact that the law requires property owners to
6 give their tenants *two years* worth of subsidized open market rents. The City offers no reason why
7 this is proportional to the Levins' decision to take a unit off the market. Nor does the City's
8 analysis account for the fact the tenants can use their two years of subsidized rent for any purpose.
9 It is these factors that make the Ordinance's tenant payment scheme disproportionate in nature and
10 degree to the impact of Plaintiffs' decision to exercise their legal right, after proper notice, to leave
11 the rental market. Plaintiffs are therefore likely to prevail on their unconstitutional conditions
12 claim. *Dolan v. City of Tigard*, 512 U.S. 374, 391 (1994); *see also Loretto*, 458 U.S. at 439 n.17
13 ("[A] landlord's ability to rent his property may not be conditioned on his forfeiting the right to
14 compensation for a physical occupation.").

15 **D. The Ordinance Does Not Rationally Advance a Public Purpose When
       It Gives Money to Tenants for Their Unrestricted Private Use**
16

17    On the Public Use takings claim, the City argues that the standard is so deferential as to be
18 almost blind to the realities of the private-to-private transfer occurring here. But Public Use
19 review, even under a rational basis test, "does not . . . alter the fact that transfers intended to confer
20 benefits on particular, favored private entities, and with only incidental or pretextual public
21 benefits, are forbidden by the Public Use Clause." *Kelo v. City of New London, Conn.*, 545 U.S.
22 469, 490 (2005) (Kennedy, J., concurring). "A court applying rational-basis review under the
23 Public Use Clause should strike down a taking that, by a clear showing, is intended to favor a
24 particular private party, with only incidental or pretextual public benefits . . . ." *Id.* at 491
25 (Kennedy, J., concurring). The problem for the City here is that the Ordinance's tenant payment
26 scheme cannot rationally advance the City's alleged purpose—mitigating relocation or rent costs
27 for tenants—when it simply hands over the landlord's money to tenants with no strings attached.
28 This flaw dooms the Ordinance even under deferential rational basis Public Use review. And it

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

certainly defeats the Ordinance under the *Kelo* Justices' (four dissenting, one concurring) repudiation of a taking "that . . . is intended to favor a particular private party, with only incidental or pretextual public benefits." *Id.*; *see also id.* at 497 (O'Connor, J., dissenting) ("Government may compel an individual to forfeit her property for the *public's* use, but not for the benefit of another private person."). After all, the Ordinance intentionally benefits private tenants, with only incidental public benefits (if that), by transferring a landlord's money to the tenants without any restrictions on their use of the money. The tenant payments thus "directly benefit tenants, not society at large." *Pieri v. City & Cnty. of San Francisco*, 137 Cal. App. 4th 886, 893 n.5 (2006).

## CONCLUSION

The Court should conclude that Plaintiffs have demonstrated a likelihood of prevailing on their claims and that they face a high risk of irreparable harm if the Court does not issue an injunction. It should then grant Plaintiffs' motion for a temporary restraining order and preliminary injunction.

DATED: August 19, 2014.

Respectfully submitted,

J. DAVID BREEMER
JENNIFER F. THOMPSON

By   /s/ J. David Breemer
         J. DAVID BREEMER

Attorneys for Plaintiffs

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111  FAX (916) 419-7747

Pl.s' Reply Mem. in Supp. of TRO & Prelim. Inj.
No. 3:14-CV-03352-CRB              - 12 -