1 J. DAVID BREEMER, No. 215039
  E-mail:  jdb@pacificlegal.org
2 JENNIFER F. THOMPSON, No. 280885
  E-mail:  jft@pacificlegal.org
3 Pacific Legal Foundation
  930 G Street
4 Sacramento, California 95814
  Telephone:  (916) 419-7111
5 Facsimile:  (916) 419-7747

6 Attorneys for Plaintiffs

7

8              UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10              SAN FRANCISCO DIVISION

11

12 DANIEL LEVIN; MARIA LEVIN; PARK LANE      )      No. 3:14-CV-03352-CRB
   ASSOCIATES, L.P.; THE SAN FRANCISCO       )
13 APARTMENT ASSOCIATION; and THE            )      **PLAINTIFFS' RESPONSE TO**
   COALITION FOR BETTER HOUSING,             )      **DEFENDANT'S TRIAL BRIEF**
14                                           )
                          Plaintiffs,        )      Trial Date: October 6, 2014
15                                           )      Judge:  Hon. Charles R. Breyer
         v.                                  )      Courtroom 6, 17th Floor
16                                           )
   CITY AND COUNTY OF SAN FRANCISCO,         )
17                                           )
                          Defendant,         )
18                                           )
         and                                 )
19                                           )
   DAVID GREENE and ALL OTHERS SIMILARLY     )
20 SITUATED,                                 )
                                             )
21                        Intervenors.       )
                                             )
22

23

24

25

26

27

28

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA  95814
(916) 419-7111 FAX (916) 419-7747

1

**TABLE OF CONTENTS**

2
**Page**

3
TABLE OF AUTHORITIES ...................................................... ii

4
INTRODUCTION ............................................................ 1

5
ARGUMENT ............................................................... 3

6
I.   PLAINTIFFS' FACIAL *NOLLAN/DOLAN* CLAIMS ARE
     VIABLE AND PROPERLY TARGET LEGISLATION, AND
7    THERE IS NO REASONABLE RELATIONSHIP BETWEEN
     THE PAYMENT AND WITHDRAWAL OF RENTAL PROPERTY .............. 3

8
     A.   The City Fails to Show a Reasonable Relationship Between the Social
9         Impact of Withdrawing Rental Property and the Payment Mandate ........... 4

10   B.   Plaintiffs' Facial *Nollan/Dolan* Claims Are Proper ....................... 5

11   C.   The Abrogated *McClung* Decision Does Not Bar Plaintiffs'
          *Nollan/Dolan* Claims Against the 2014 Ordinance and Other
12        Ninth Circuit Precedent Confirms the Viability of Such Claims ............. 6

13   D.   An Outright Demand That Plaintiffs Cede Money to
          Tenants To Sustain Ownership Would Be a Taking ...................... 9
14

15   II.  THE 2014 ORDINANCE IS SUBJECT TO STRAIGHTFORWARD
          TAKINGS ANALYSIS BECAUSE IT CAN ONLY CAUSE A
          TAKING, AND THE PROPER TEST IS A PER SE STANDARD ............... 9
16

17   A.   Traditional Takings Analysis Applies When a Law Offers Two Property
          Use Choices—Denial or an Exaction—That Both Cause a Per Se Taking ...... 10

18   B.   The City Misunderstands the Scope of Per Se Analysis in
          Contending It Does Not Apply to the 2014 Ordinance ..................... 11
19

20        1.   *Brown*'s Per Se Approach for Money
               Takings Trumps the City's Precedent ............................. 11

21        2.   A Payment Demand Arising from an Owner's Decision To
               *Exit* the Rental Business Is Not Constitutionalized by Rent
22             Control Rules Arising from a Decision to *Enter* the Market .............. 12

23        3.   Plaintiffs' Compelled Tenant Occupation Arguments
               Are Timely, and the City Has No Defense on the Merits ................ 13
24

25   III. THE CITY FAILS TO IDENTIFY A RATIONAL BASIS FOR THE
          PAYMENT SUFFICIENT TO SATISFY DUE PROCESS; NOR DOES
          IT JUSTIFY THE LAW UNDER CALIFORNIA'S ELLIS ACT ................ 14
26

27   IV.  PLAINTIFFS' FACIAL TAKINGS CLAIMS ARE RIPE ..................... 16

     CONCLUSION ............................................................ 17
28

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA  95814
(916) 419-7111  FAX (916) 419-7747

Plaintiffs' Response to Defendant's Trial Brief
No. 3:14-CV-03352-CRB                            - i -

**TABLE OF AUTHORITIES**

**Cases**

*ABN 51st Street Partners v. City of New York*, 724 F. Supp. 1142 (S.D.N.Y. 1989) . . . . . .  5, 8

*Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*,
   509 F.3d 1020 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*Brown v. Legal Foundation of Washington*, 538 U.S. 216 (2003) . . . . . . . . . . . . . . . . . . .  9, 12

*City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) . . . . . . . . . . . . . . . . . . . . .  15

*Commercial Builders of Northern California v. City of Sacramento*,
   941 F.2d 872 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5, 8

*Crow-New Jersey 32 Ltd. Partnership v. Township of Clinton*,
   718 F. Supp. 378 (D.N.J. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 8

*Crown Point Development, Inc. v. City of Sun Valley*, 506 F.3d 851 (9th Cir. 2007) . . . . . .  14

*De Anza Properties X, Ltd. v. County of Santa Cruz*, 936 F.2d 1084 (9th Cir. 1991) . . . . . 13-14

*Dolan v. City of Tigard*, 512 U.S. 374 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4-6

*Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 11

*F.C.C. v. League of Women Voters of California*, 468 U.S. 364 (1984) . . . . . . . . . . . . . . . .  6

*Garneau v. City of Seattle*, 147 F.3d 802 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . 5-6

*Guggenheim v. City of Goleta*, 638 F.3d 1111 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . .  17

*Horne v. U.S. Department of Agriculture*, 750 F.3d 1128 (9th Cir. 2014) . . . . . . . . .  7-8, 11-12

*Howard Jarvis Taxpayers Ass'n v. City of La Habra*, 25 Cal. 4th 809 (2001) . . . . . . . . . . .  14

*Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586 (2013) . . . . . . . . . .  6, 8-9, 11-12

*Lair v. Bullock*, 697 F.3d 1200 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*Lebbos v. Judges of Superior Court, Santa Clara Cnty.*, 883 F.2d 810 (9th Cir. 1989) . . . . .  15

*Legal Aid Services of Oregon v. Legal Services Corp.*, 608 F.3d 1084 (9th Cir. 2010) . . . . . .  6

*Legal Services Corp. v. Velazquez*, 531 U.S. 533 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982) . . . . . . . . . . . . . . . .  11

*MacDonald, Sommer & Frates v. Yolo Cnty.*, 477 U.S. 340 (1986) . . . . . . . . . . . . . . . . . . .  17

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

**Page**

*McClung v. City of Sumner*, 548 F.3d 1219 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . .  7

*McNulty v. Town of Indialantic*, 727 F. Supp. 604 (M.D. Fla. 1989) . . . . . . . . . . . . . . . .  4-6, 8

*Memorial Hospital v. Maricopa County*, 415 U.S. 250 (1974) . . . . . . . . . . . . . . . . . . . . . . . . .  6

*Nollan v. California Coastal Commission*, 483 U.S. 825 (1987) . . . . . . . . . . . . . . . . .  2, 4, 8-10

*Parks v. Watson*, 716 F.2d 646 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*Philip Morris, Inc. v. Reilly*, 312 F.3d 24 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*Rust v. Sullivan*, 500 U.S. 173, 177 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*San Remo Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323 (2005) . . . . . . . .  16-17

*Seawall Associates v. City of New York*, 542 N.E.2d 1059 (N.Y. 1989) . . . . . . . . . . . .  10, 12-13

*Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725 (1997) . . . . . . . . . . . . . . . . . . . . .  16

*Surfside Colony, Ltd. v. California Coastal Comm'n*, 226 Cal. App. 3d 1260 (1991) . . . . . . .  4

*Sylvia Landfield Trust v. City of Los Angeles*, 729 F.3d 1189 (9th Cir. 2013) . . . . . . . . . . .  15

*Town of Nags Head v. Toloczko*, 728 F.3d 391 (4th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . .  17

*Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926) . . . . . . . . . . . . . . . . . . . . . . . . .  15

*Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155 (1980) . . . . . . . . . . . . . . . . . .  11

*Williamson County Regional Planning Commission v. Hamilton Bank*,
    473 U.S. 172 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*Yee v. City of Escondido*, 503 U.S. 519 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*Youpee v. Babbitt*, 67 F.3d 194 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

**Statutes**

Cal. Gov't Code § 7060 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

    § 7060.1(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

**Miscellaneous**

Reznik, Inna, *The Distinction Between Legislative and Adjudicative Decisions*
    *in* Dolan v. City of Tigard, 75 N.Y.U. L. Rev. 242 (2000) . . . . . . . . . . . . . . . . . . . . . . . .  8

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

**INTRODUCTION**

Defendant City and County of San Francisco (City) acknowledges that San Francisco Administrative Code Section 39.9A(e)(3)(E) (2014 Ordinance) requires rental owners to pay up to hundreds of thousands of dollars to their tenants, so the tenant can (potentially) acquire housing in the city for two years, before the owner may exit the rental market (Payment). It admits that the Ordinance requires Daniel and Maria Levin (Levins) to pay more than $117,000 to a single tenant before the Levins can re-possess the bottom portion of their two story home for their own uses. The City nevertheless desperately defends the 2014 Ordinance from Plaintiffs' facial constitutional challenges. But its efforts are defeated by the lack of a real connection between the Payment mandate and (1) the impact of withdrawing property from the market or (2) the alleged purpose of the Payment. The disconnect is apparent from these uncontested, stipulated and admitted truths:

    \*    There is no requirement in the 2014 Ordinance that the Payment be used for housing. All or some of it can be used for any other purpose. The law provides no incentive or mechanism to ensure tenants use the Payment for housing, and the City will never know if they do. "Might" does not create a sufficient connection between the Payment exaction and the underlying purpose of the law.

    \*    The 2014 Ordinance does not require the Payment to be put to use in San Francisco. It provides no constraints on *where* tenants use the Payment. Even if tenants desire to put the money toward housing, they can do that by purchasing a houseboat in Los Angeles, if they wish.

    \*    There is no income requirement for tenants to receive the Payment. Tenants receive the Payment whether they need affordable housing assistance or not.

    \*    There is no evidence or logic to conclude that withdrawing property owners cause a tenant's need to stay in San Francisco. That need is caused by forces outside the property owner's control, including personal choices. Nor is there reason to believe landlords cause the insufficient supply of affordable housing in San Francisco.

///

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1     * There is no evidence that withdrawing rental property causes a tenant's need to

2       purchase *two years* of open market housing; there is no evidence at all as to why

3       the law demands two years worth of rent subsidies from property owners, rather

4       than one month or ten years.

5     * Just before it enacted the 2014 Ordinance, the City enacted a law creating an "Ellis

6       Act Housing Preference" program[1] for tenants displaced by the Ellis Act.  *See*

7       Exhibit 1.  This confirms that the City can and, in fact, *has* created an affordable

8       housing program that is properly tailored to address Ellis Act rental withdrawals,

9       and that the Payment mandate is (in contrast) simply an un-tailored transfer of

10      wealth from property owners to tenants.

11    * The Payment mandate applies to both rent controlled and non-rent controlled units.

12      Thus, it allows a tenant already in an open market-rate unit to receive a Payment

13      (if the owner uses the Ellis Act) enabling the tenant to move to a more expensive

14      open market unit for two years (or to use the money for other purposes).

15    Given these realities, the 2014 Ordinance simply cannot survive rational basis scrutiny,

16   much less the heightened scrutiny which applies under the "nexus" and "rough proportionality"

17   tests of *Nollan v. California Coastal Commission*, 483 U.S. 825 (1987), and *Dolan v. City of*

18   *Tigard*, 512 U.S. 374 (1994).  Nor can the Ordinance survive California mitigation law, which is

19   incorporated in the Ellis Act—California Government Code Section 7060.1(c).  *See* Plaintiffs'

20   Trial Brief at 22.

21   ///

22   ///

23   ///

24   

---

[1]  Plaintiffs only recently learned of the program's existence.  The law creating the program is available on-line at: http://www.sfbos.org/ftp/uploadedfiles/bdsupvrs/ordinances13/o0277-13.pdf. It is attached to this brief as Exhibit 1.  A City manual describing the operation of the Ellis Act affordable housing program is available here: http://sf-moh.org/modules/showdocument.aspx? documentid=7921.  It is attached to this brief as Exhibit 2.  Plaintiffs attempted to have such City documents added in the trial exhibits, but were unable to secure consent from the City. Therefore, Plaintiffs request that the Court judicially notice both the ordinance and the manual attached to this brief pursuant to Federal Rules of Evidence Rule 201(b)(2).

Sensing the danger, the City throws up numerous procedural barriers to Plaintiff's claims. But the law does not support its defenses. Facial *Nollan* "nexus" claims are routine. And facial *Dolan* "rough proportionality" claims are entirely proper when, as here, they target the text of a mitigation law, rather than the exact amount of mitigation people must pay under the law. Similarly, there is no bar to *Nollan/Dolan* claims against legislatively imposed exactions. The City's other arguments are equally unavailing.

It is clear the City wants to help tenants afford housing in San Francisco, and it has valid options for doing so. *See* Exhibit 2. But the 2014 Ordinance is not one of them. No constitutional test and no rule of reason supports extracting two years of rent subsidies from withdrawing rental owners when there is no basis for believing the owners' acts cause the need for the Payment, or that recipient tenants need, or will use, the Payment for a housing purpose in San Francisco. Without such assurances, the 2014 Ordinance simply takes property from one class of citizens to benefit another. Since the law fails to include a mechanism for compensating aggrieved owners, and the City has not offered compensation, Stipulated Facts at 16 ¶ 78, the Ordinance must be enjoined.

**ARGUMENT**

**I**

**PLAINTIFFS' FACIAL *NOLLAN/DOLAN* CLAIMS ARE VIABLE AND PROPERLY TARGET LEGISLATION, AND THERE IS NO REASONABLE RELATIONSHIP BETWEEN THE PAYMENT AND WITHDRAWAL OF RENTAL PROPERTY**

As the Court knows, *Nollan* and *Dolan* require the government to show that there is a "nexus" and "rough proportionality" between an exaction of money and the social impact of the regulated property. On the merits of this claim, the City fails to provide any argument, much less evidence, justifying the 2014 Ordinance. Consequently, the City effectively rests its case on purported procedural barriers to Plaintiffs' *Nollan* and *Dolan* arguments. In particular, the City

///

///

///

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1  argues (1) facial *Nollan/Dolan* claims do not exist, (2) *Nollan* and *Dolan* do not apply to

2  legislatively imposed exactions,[2] and (3) the Payment demand is not subject to *Nollan* and *Dolan*,

3  because it is not a taking.  These arguments fail because they rest on inapposite precedent and

4  misinterpret the *Nollan* and *Dolan* standards.

5  **A.  The City Fails to Show a Reasonable Relationship Between the Social Impact of Withdrawing Rental Property and the Payment Mandate**

6

7  It is the City's burden to prove that its Payment mandate is reasonably related in nature and

8  extent to the withdrawal of rental property.  *Dolan*, 512 U.S. at 391.  It cannot shoulder that

9  burden.  The direct impact of withdrawal is displacement of a tenant.  The tenant needs to move.

10  As a large, unrestricted cash giveaway with no relation to moving costs and the like, the Payment

11  is entirely unrelated to relocation.

12  Even if we assumed the 2014 Ordinance is meant to redress a tenant's loss of affordable

13  housing in San Francisco, it still fails.  How can the Payment mandate be reasonably related to this

14  purpose when (under the terms of the 2014 Ordinance) it need not be spent on housing, and need

15  not be spent in San Francisco, but is instead simply a "no-strings" transfer of money from landlord

16  to tenant?  The City's only answer is that some tenants *might* spend money on housing, and *might*

17  spend it in the city, and the Court has to defer to this possibility.  But the *Nollan* test is not a

18  toothless rational basis test.  *Nollan*, 483 U.S. at 841-42; *Dolan*, 512 U.S. at 391; *McNulty v. Town*

19  *of Indialantic*, 727 F. Supp. 604, 606 (M.D. Fla. 1989) (*Nollan* "used strict scrutiny to examine the

20  fit between the challenged regulation and the claimed state interest.").  The "nexus" test requires

21  a real, not a *speculative,* connection between an exaction and social problem arising from property.

22  *Dolan*, 512 U.S. at 395; *Surfside Colony, Ltd. v. California Coastal Comm'n*, 226 Cal. App. 3d

23  1260, 1270 (1991) (requiring "substantial" and specific evidence of a close connection between

24  property subject to condition and the condition).  Unfortunately for the City, the Payment mandate

25

26  [2]  It is interesting that the City has no objection to Plaintiffs' facial substantive due process claim.
27  If a facial due process claim targeting legislation and based on a rational basis test is unobjectionable, then how can the City object to a facial *Nollan/Dolan* claim that targets legislation based on a "reasonable relationship" test that is also a form of means-ends analysis
28  (albeit a higher level of scrutiny)?

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1    only exhibits a speculative nexus.  *Philip Morris, Inc. v. Reilly*, 312 F.3d 24, 44 (1st Cir. 2002)

2    (finding a taking in part because "[t]he tremendous individual loss is simply not justified by such

3    a speculative public gain").

4          It gets even worse for the City when *Dolan*'s "rough proportionality" test comes into play.

5    The City cannot and does not explain how a requirement that a withdrawing rental owner subsidize

6    two years of a former tenant's rents is proportional to the owner's decision to go out of the rental

7    business.   Putting aside the nexus problem for the moment, perhaps the City could have

8    proportionally required rental owners to pay a needy tenant's direct relocation costs, security

9    deposit and first month's rent—thus enabling a tenant to get started in a new unit.  But the 2014

10   Ordinance demands much more; it requires rental owners give their past tenants enough money

11   for two years, regardless of need. This is disproportionate.  *Dolan*, 512 U.S. at 393.

12   **B.   Plaintiffs' Facial *Nollan/Dolan* Claims Are Proper**

13         Faced with 2014 Ordinance's infirmities under *Nollan* and *Dolan*, the City resorts to trying

14   to block those cases entirely, arguing that Plaintiffs facial *Nollan/Dolan* claims are not cognizable.

15   In so doing, the City relies on Judge Brunetti's opinion in the *Garneau v. City of Seattle*, 147 F.3d

16   802 (9th Cir. 1998).[3]   City's Brief at 12.   An opinion of one judge in a fragmented case like

17   *Garneau* is not binding.  *Lair v. Bullock*, 697 F.3d 1200, 1205 (9th Cir. 2012).   In any event,  the

18   City's  argument rests on a flawed and superficial reading of Judge Brunetti's views in *Garneau*.

19         As Plaintiffs' Trial Brief noted, Judge Brunetti's *Garneau* opinion never repudiates a facial

20   <u>*Nollan*</u> claim.   The City provides no authority holding that the *Nollan* "nexus" test cannot be

21   facially invoked against a property law.  This is because *Nollan* facial claims have been frequently

22   litigated, including in the Ninth Circuit case of *Commercial Builders of Northern California v. City*

23   *of Sacramento*, 941 F.2d 872, 875 (9th Cir. 1991); *see also, ABN 51st Street Partners v. City of*

24   *New York*, 724 F. Supp. 1142, 1153 (S.D.N.Y. 1989) (facially applying *Nollan* to a claim against

25

26   [3] The *Garneau* decision consists of three opinions.  Judge Brunetti's leading opinion discusses
     legislative exactions in rejecting the claim in that case.  Judge Williams concurred in the judgment,
27   but wrote a separate opinion explaining his reasoning, one that did not mention legislative
     exactions.  Judge O'Scannlain dissented from the judgment and would have applied *Nollan/Dolan*
28   to the legislation at issue.

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1   an ordinance that required the owner to reserve units for low income renters when renovating

2   property); *Crow-New Jersey 32 Ltd. Partnership v. Township of Clinton*, 718 F. Supp. 378, 384

3   (D.N.J. 1989) (applying *Nollan*'s "nexus" test to terms of a land use ordinance); *McNulty*, 727 F.

4   Supp. at 606 (applying *Nollan* to a set back Ordinance). Thus, at a bare minimum, Plaintiffs' facial

5   *Nollan* claim is live and the law fails under the claim.

6        *Garneau* is also not a barrier to Plaintiffs' *Dolan* "rough proportionality" claim. In

7   *Garneau* Judge Brunetti rejected a *Dolan* claim that hinged on the exact amount of money a

8   relocation payment law required landlords to make. 147 F.3d at 811. This case is different.

9   Plaintiffs' "rough proportionality" arguments are not based on the *dollar amount* of the payments

10  rental owners must make when the 2014 Ordinance is applied to them; they are based on the *nature*

11  of the Payment mandate *as stated in the text of* the law. They argue an unrestricted, two-year

12  differential payment is inherently disproportionate.

13       The idea that *Nollan/Dolan* cannot be raised in a facial challenge is not only unsupported

14  by precedent, it is inconsistent with the Supreme Court's recent clarification that its exactions

15  precedent arises, at least in part, from in the Unconstitutional Conditions Doctrine. *Koontz v. St.*

16  *Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586, 2594 (2013) ("*Nollan* and *Dolan* 'involve a

17  special application' of this [unconstitutional conditions] doctrine . . . ." (quoting *Lingle v. Chevron*

18  *U.S.A. Inc.*, 544 U.S. 528, 547 (2005))); *Lingle*, 544 U.S. at 547 ("these cases involve a special

19  application of the 'doctrine of "unconstitutional conditions"' " (quoting *Dolan*, 512 U.S. at 385)).

20  After all, under the Unconstitutional Conditions Doctrine, federal courts regularly adjudicate facial

21  claims asserting that the text of a law creates a condition that interferes with a constitutional right.

22  *See Legal Services Corp. v. Velazquez*, 531 U.S. 533, 541-49 (2001); *Rust v. Sullivan*, 500 U.S.

23  173, 177, 196-99 (1991); *F.C.C. v. League of Women Voters of California*, 468 U.S. 364, 400

24  (1984); *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 252-53, 269 (1974); *Legal Aid*

25  *Services of Oregon v. Legal Services Corp.*, 608 F.3d 1084, 1093-94 (9th Cir. 2010). Thus,

26  Unconstitutional Conditions jurisprudence—which now undergirds *Nollan* and *Dolan*—confirms

27  ///

28  ///

1  that facial claims are proper when they target the text of a challenged law and a court can apply

2  the relevant test to the text.

3  **C.  The Abrogated *McClung* Decision Does Not Bar Plaintiffs'**
   ***Nollan/Dolan* Claims Against the 2014 Ordinance and Other**

4  **Ninth Circuit Precedent Confirms the Viability of Such Claims**

5          In a second attempt to evade Plaintiffs' merits arguments, the City argues that *Nollan* and

6  *Dolan* do not apply to exactions arising from a generally applicable legislative program.  City's

7  Brief at 14.  This argument fails as well, because it too misreads the precedent.  The City relies

8  exclusively on *McClung v. City of Sumner*, 548 F.3d 1219, 1222 (9th Cir. 2008), a decision

9  recently abrogated by the Supreme Court in *Koontz*.  *McClung*'s precedential value is in doubt,[4]

10  but even it has some value, it does not bar Plaintiffs' *Nollan/Dolan* challenge.

11          First, the City has over-stated *McClung*'s holding.  In *McClung*, the Ninth Circuit

12  emphasized the limited nature of its conclusions, stating:

13          the ordinance before us concerns a permit condition designed to mitigate the
        adverse effects of the new development.  New construction increases the burden on
14          the City's sewer system and increases the loss that might result from flooding.
        After experiencing considerable flooding, the City enacted Ordinance 1603 to
15          require most new developments to include specified storm pipes.  We are not
        confronted, therefore, *with a legislative development condition designed to advance*
16          *a wholly unrelated interest*.  We do not address whether *Penn Central* or
        *Nollan/Dolan* would apply to such legislation.

17

18  548 F.3d at 1225 n.3 (emphasis added).  Here, the Court *is* dealing with a condition—the

19  Payment—that is entirely unrelated to a public interest in keeping people in affordable housing in

20  San Francisco because nothing in the 2014 Ordinance constrains tenants to use the Payment for

21  housing needs or to spend it within San Francisco.

22          Second, Ninth Circuit precedent issued both before and after *McClung* allows *Nollan/Dolan*

23  claims against legislative exactions, thus confirming that *McClung* does not preclude such claims.

24  As the City reluctantly notes, the recent *Horne v. U.S. Department of Agriculture* decision allowed

25

───────────────

26  [4]  The City appears to argue that *McClung* is only abrogated with respect to its holding that *Nollan*
   and *Dolan* do not apply to monetary exactions and therefore, that it remains viable on the

27  legislative exaction issue.  But *McClung*'s discussion of legislative exactions is so entwined with
   its (now admittedly abrogated) repudiation of monetary exactions that the two cannot be parceled

28  out.

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA  95814
(916) 419-7111 FAX (916) 419-7747

a *Nollan/Dolan* claim against a generally applicable federal regulatory scheme, 750 F.3d 1128, 1144 (9th Cir. 2014). But what it does not say is that the Ninth Circuit also applied *Nollan* to a legislative exaction long *before McClung*. *See Commercial Builders*, 941 F.2d at 875.[5] If the earliest Ninth Circuit decision controls, this Court must follow *Commercial Builders*, not *McClung* (still assuming *McClung* has precedential value). But the Court need not go down this road because, as discussed above, *McClung* simply did not create a per se bar to claims against legislated exactions. Other federal courts have also applied the *Nollan* doctrine to legislation. *ABN 51st Street Partners*, 724 F. Supp. at 1153; *Crow-New Jersey 32 Ltd. Partnership*, 718 F. Supp. at 384; *McNulty*, 727 F. Supp. at 606.

Finally, to the extent the law is indeterminate on the issue, this Court should defer to the purposes of *Nollan* and *Dolan*. Those decisions are designed to alleviate the danger that the government will use its property conditioning powers to exact property which it could not directly appropriate (without compensation). *Nollan*, 483 U.S. at 831; *Koontz*, 133 S. Ct. at 2594-95. While it is theoretically possible that the legislative process may mitigate this danger in some instances, it will not always be so. When, as here, a majority uses legislation to require a minority of citizens to cede property for a purported public purpose, as a condition of their property ownership, and there is no clear link in the law between the property use and the condition, the danger remains that the government is improperly using the exaction power to take private property. *See generally*, Inna Reznik, *The Distinction Between Legislative and Adjudicative Decisions in* Dolan v. City of Tigard, 75 N.Y.U. L. Rev. 242, 267-74 (2000). In such cases, the legislative/adjudicative distinction makes no sense, and the *Nollan/Dolan* standards should be applied.

///

///

///

---

[5] *Commercial Builders*' conclusions about the scope of *Nollan*, and the takings test applicable to money takings, have been superceded by the Supreme Court's decisions in *Dolan* and *Brown*. But the preliminary decision to apply the *Nollan* test to a legislative exaction remains good law.

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1   **D.  An Outright Demand That Plaintiffs Cede Money to**
    **Tenants To Sustain Ownership Would Be a Taking**

2

3          The City's last ditch argument is that *Nollan* and *Dolan* do not apply to the Payment

4   because it would not be a taking if the City simply demanded that property owners cede money to

5   their tenants.  *See Nollan*, 831 U.S. at 833-34 (indicating that *Nollan*'s test applies to property

6   exactions that would be a taking if the government appropriated it outside the permit process).

7   This argument must fall under *Brown v. Legal Foundation of Washington*, 538 U.S. 216, 235, 240

8   (2003), *Koontz*, and *Horne*.  The latter two decisions applied *Nollan* and *Dolan* to demands for

9   personal property.  In *Koontz*, the Court specifically held that *Nollan* and *Dolan* applied to a

10  monetary exaction because an outright demand for money linked to the ownership of property is

11  a per se taking.  133 S. Ct. at 2600.

12         A fair application of *Nollan* and *Dolan* dooms the 2014 Ordinance,[6] and when a law

13  facially violates the *Nollan/Dolan* tests, there is nothing left for the Court to do except declare it

14  unconstitutional and strike it down.  *See Nollan*, 483 U.S. at 384; *Youpee v. Babbitt*, 67 F.3d 194,

15  198, 200 (9th Cir. 1995) (affirming a district court's declaration and injunction against a statute

16  causing a facial taking); *see also*, *Eastern Enterprises v. Apfel*, 524 U.S. 498, 538 (1998) ("the

17  Coal Act's allocation of liability to Eastern violates the Takings Clause, and [] should be

18  enjoined").

19                                              **II**

20              **THE 2014 ORDINANCE IS SUBJECT TO STRAIGHTFORWARD**
                **TAKINGS ANALYSIS BECAUSE IT CAN ONLY CAUSE A**
21              **TAKING, AND THE PROPER TEST IS A PER SE STANDARD**

22         The City argues that Plaintiffs cannot raise a per se takings claim against the 2014

23  Ordinance because (in its view) a property law posing a choice of impositions must be analyzed

24  under *Nollan* and progeny.  Alternatively, it argues the 2014 Ordinance does not cause a per se

25  taking in appropriating money or real property.  It is wrong on all counts.

26  _____

27  [6] Even if the heightened scrutiny of *Nollan* and *Dolan* does not apply to the 2014 Ordinance for
    some reason, that Ordinance would be subject to—and fail—pre-*Nollan* "reasonable relationship"
28  exactions standards.  *See Parks v. Watson*, 716 F.2d 646, 651-53 (9th Cir. 1983).

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

## A.   Traditional Takings Analysis Applies When a Law Offers Two Property Use Choices—Denial or an Exaction—That Both Cause a Per Se Taking

The City misunderstands *Nollan* in arguing only *Nollan* and *Dolan* apply when a law gives a property owner a choice. *Nollan* hinged the applicability of the "nexus" test on two assumptions: (1) that the government could deny the proposed property use outright *without* causing a taking, 483 U.S. at 836-37, and (2) that an exaction condition imposed as an alternative to denial would be a taking if the government simply confiscated the property targeted by the exaction rather than imposing it through the permit process. *Id.* at 833-34.   The idea is that if the government can *legitimately* deny a property use due to some impact, it must be able to offer a conditional alterative to denial—as long as the there is a sufficient relationship ("nexus") between the exaction and the impact of the property use.

The problem here is that the first assumption behind *Nollan*—that denial of the proposed property use would *not* be a taking—is not applicable.   The property use at issue here is the withdrawal of property from the rental market and cessation of its occupation by a tenant.   Unlike in *Nollan*, the City *would* cause a per se taking if it denied outright the ability of property owners to take possession of their property.   *See* Plaintiff's Trial Brief at 15-16.   Consequently, the predicate of a "permissible denial" does not exist, and without it, *Nollan* does not apply.   *Nollan*, 483 U.S. at 836-37.

When the government would cause a taking by denying a property use, it cannot require the owner to submit to a condition that itself causes as taking, as the price for avoiding the first taking.   *See Seawall Associates v. City of New York*, 542 N.E.2d 1059, 1069-70 (N.Y. 1989) ("[I]f the initial act amounts to an unlawful taking, then permitting the owners to avoid the illegal confiscation by paying a 'ransom' cannot make it lawful.").   In that situation,  the government is simply forcing the property owner to pick his takings poison, rather than offering a (potentially permissible) exaction alternative, and *Nollan* has no relevance.   A law that inevitably results in one

///

///

///

1  of two types of traditional per se takings—as the 2014 Ordinance does—must simply be  treated

2  as a per se taking.[7]

3  **B.  The City Misunderstands the Scope of Per Se Analysis**
   **in Contending It Does Not Apply to the 2014 Ordinance**

4

5         On the merits of Plaintiffs' per se takings claims, the City contends the burdens the 2014

6  Ordinance imposes on rental owners do not rise to the level of a per se taking.  The City is wrong

7  once again.

8      **1.  *Brown*'s Per Se Approach for Money**
          **Takings Trumps the City's Precedent**

9

10        The City relies on two cases in arguing that a per se test is inapplicable to a money taking

11  like the Payment mandate:  *Eastern Enterprises*, 524 U.S. 498, and *Horne*, 750 F.3d 1128.  But

12  these decisions do not control.  *Eastern Enterprises* has been superceded on the money takings

13  issue by more recent decisions, such as *Brown*, and *Koontz*, both of which confirm that a per se

14  approach governs a money taking linked to a traditional property interest, such as real property.

15  *See Koontz*, 133 S. Ct. at 2600.  *Eastern* now stands for the very limited proposition that a

16  legislative demand for money that is unconnected to any traditional property interest may not be

17  a taking.  *Id.* at 2599-2600.  Here, of course, the Payment burdens real property, bringing this case

18  under the per se framework of *Brown* and *Koontz*.

19        The City tries to distinguish *Brown* by asserting it applies only to "appropriation of a

20  *specific, identifiable fund*."  City's Brief at 19.  But this is not what *Brown* says, nor is it how the

21  Supreme Court has read *Brown*.  *Brown* was very much like this case:  the plaintiffs there

22  challenged a law that, on its face, authorized the government to transfer money, in the form of

23  interest, from a certain class of people to others.  No "specific, identifiable fund" was taken—the

24  _____

25  [7] If a state passed a law requiring property owners to turn over interest on court accounts to the
   state if they want to use the courts, *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155
   (1980), or allow an occupation of their property, *Loretto v. Teleprompter Manhattan CATV Corp.*,
26  458 U.S. 419 (1982), we wouldn't apply *Nollan/Dolan* to determine the constitutionality of the
   law; we would simply conclude there is a taking.  The same situation is at hand.  By enactment,
27  the 2014 Ordinance compels rental owners to select from Taking #1—the appropriation of their
   money—or Taking #2—the continued occupation of their property, and denial of the right to
28  exclude others from the property.

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1   law imposed a general ongoing obligation—and yet the Court adopted a per se takings approach.

2   *Brown*, 538 U.S. at 235, 240.  In *Koontz*, the Court explained that *Brown*'s per se approach was

3   valid not because the money taking there appropriated a specific bank "fund" or account, but

4   because the taking operated on a *traditional property interest*.  133 S. Ct. at 2599-2600.  The same

5   considerations apply here.  *Brown*'s per se test applies.

6      *Horne*, 750 F.3d 1128, does not alter the Supreme Court's per se framework.  *Horne* did

7   not address, much less limit, *Brown*.  Nor could it.  In *Brown*, the Supreme Court <u>overruled</u> the

8   Ninth Circuit's rejection of a per se test in prior proceedings of that same case.  538 U.S. at 231,

9   235.  *Horne* could not revive the Ninth Circuit's incorrect and repudiated view of the per se test.

10   Indeed, it did not even directly consider the applicability of a per se approach to a money taking;

11   *Horne* considered a requirement that a raisin grower give the government a portion of its crop.  750

12   F.3d at 1139-41 (analyzing a raisin "Marketing Order").  Given *Horne*'s unique facts and the

13   supremacy of Supreme Court precedent, *Brown*, not *Horne*, controls here.

**2.   A Payment Demand Arising from an Owner's Decision To**
**   *Exit* the Rental Business Is Not Constitutionalized by Rent**
**   Control Rules Arising from a Decision to *Enter* the Market**

16      The City continues to argue that the Payment demand in the 2014 Ordinance is not a taking

17   because it is like traditional rent control.  But two important distinctions refute its argument.  First,

18   courts that have upheld rent control have done so on the ground that property owners have a choice

19   to allow or not allow tenants into their property.  As long as owners can abandon the rental

20   business, so say such courts, the transfer of wealth from landlord to tenant under rent control may

21   be valid.  But here, property owners are trying to exit, not enter the market, and the City is *still*

22   requiring them to transfer wealth to a would-be tenant.  In effect, the City is requiring property

23   owners to transfer their property's market value to tenants whether the owners rent or not.  No

24   general rent (price) control case justifies such a scheme.  *Seawall*, 542 N.E.2d at 1064 ("Contrary

25   to defendants' contentions, the decisions . . . upholding rent control and similar regulations of

26   housing conditions and other aspects of the landlord-tenant relationship do not undermine

27   plaintiffs' claims of per se physical takings.  Indeed, those decisions have no bearing on the

28   question here . . . . It is the nature of the intrusion which is determinative—i.e., that it deprives the

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA  95814
(916) 419-7111 FAX (916) 419-7747

1  owners of their rights to possession and exclusion—not the beneficial purpose of the regulation

2  or the extent of the police power which authorizes it." (citations omitted)).

3       Furthermore, the 2014 Ordinance under attack here cannot be analogized to traditional rent

4  control regulations because the landlord receives no monetary benefit from the tenant under the

5  2014 Ordinance.  The property owner subject to rent control does receive a return from a tenant;

6  perhaps it is less than the owner would like, but it is still a benefit.  In contrast, under the 2014

7  Ordinance, subject landlords must transfer their wealth to the tenant even though the tenant is not

8  providing any return benefit.

9      **3.  Plaintiffs' Compelled Tenant Occupation Arguments**
        **Are Timely, and the City Has No Defense on the Merits**

10

11       The City presses a new statute of limitations defense against Plaintiffs' claim that the 2014

12  Ordinance causes a physical taking if rental owners refuse the Payment.  It does so (again) based

13  on its belief that Plaintiffs are targeting (long-existing) rent control regulations.  City's Brief at 20.

14  Both the premise and conclusion are false.

15       Nothing in Plaintiffs' takings claim challenges the City's controls on rental pricing.

16  *Seawall Associates*, 542 N.E.2d at 1064.  Plaintiffs instead raise a more fundamental complaint,

17  that the 2014 Ordinance compels them to abandon their right to withdraw property from the market

18  and to submit to its continued occupation by a tenant, in violation of their right to exclude others,

19  if they do not make the Payment.  *Id.*  Since Plaintiffs filed their complaint approximately two

20  months after enactment of the Payment mandate, this claim is timely under the two year limitations

21  period governing 42 U.S.C. § 1983 claims.

22       The City protests that Plaintiffs may have been able to raise such a claim against a different,

23  previously enacted City rent law (such as the 2005 Ordinance).  But this is irrelevant.  The 2014

24  Ordinance imposes new and substantively different obligations on rental owners, and creates new

25  procedures.  Therefore, it is subject to independent challenge.  *See Action Apartment Ass'n, Inc.*

26  *v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1027 (9th Cir. 2007) (amendments to an

27  ordinance "will give rise to a new cause of action [and restart the limitations period] . . . if those

28  amendments alter 'the effect of the ordinance upon the plaintiffs'" (quoting *De Anza Properties*

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA  95814
(916) 419-7111  FAX (916) 419-7747

1  *X, Ltd. v. County of Santa Cruz*, 936 F.2d 1084, 1086 (9th Cir. 1991))); *Howard Jarvis Taxpayers*

2  *Ass'n v. City of La Habra*, 25 Cal. 4th 809, 822 (2001) (holding that the plaintiffs' challenges to

3  the validity of the tax ordinance "are not barred merely because similar claims could have been

4  made at earlier times as to earlier violations").

5        On the merits, the City contends no per se taking can arise from a requirement that rental

6  owners "choose between making a required payment and continuing to rent their properties,"

7  City's Brief at 20, since a "property owner either initially consented to the creation of a tenancy

8  (or acquired property where a tenancy is in place)." *Id.* In essence, the City's position is that once

9  a property owner opens their property for rental, the government can constitutionally forbid the

10  owner from ending the occupancy. But this is precisely the sort of compelled occupation scheme

11  that federal and state courts have rejected. Plaintiff's Trial Brief at 16. Property owners have a

12  fundamental right to end occupation of their property by unwanted people. Indeed, the very

13  purpose of the Ellis Act is to prevent local governments from forcing property owners to continue

14  offering their property for accommodation. Cal. Gov't Code § 7060. A law that abridges these

15  rights, as the 2014 Ordinance does if property owners do not make the Payment, unconstitutionally

16  takes state and federal property rights.

17  **III**

18  **THE CITY FAILS TO IDENTIFY A RATIONAL**
**BASIS FOR THE PAYMENT SUFFICIENT TO**

19  **SATISFY DUE PROCESS; NOR DOES IT JUSTIFY**
**THE LAW UNDER CALIFORNIA'S ELLIS ACT[8]**

20

21        The City fails to rebut Plaintiffs' substantive due process challenge to the 2014 Ordinance

22  or its claim arising under the Ellis Act. As to the due process issue, the City agrees that the

23  standard is whether the 2014 Ordinance rationally advances a legitimate state interest. City's Brief

24  at 21. *Crown Point Development, Inc. v. City of Sun Valley*, 506 F.3d 851, 856 (9th Cir. 2007).

25  It wrongly argues, however, that the Payment mandate satisfies this test because it would

26

27  [8] Plaintiffs mistakenly included an Unreasonable Seizure under the Fourth Amendment argument
in their Trial Brief. But their Fourth Amendment claim is not at issue in the facial proceedings;

28  it pertains only to the as-applied portion.

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA  95814
(916) 419-7111  FAX (916) 419-7747

ameliorate "adverse effects" on tenants.  The first flaw in this argument is that the Payment mandate is not designed as mitigation for generalized "adverse effects," and the City offers no evidence to that effect.  The 2014 Payment requirement is specifically designed to ameliorate a tenant's presumed loss of "affordable" (rent controlled) housing after an Ellis Act withdrawal, and to enable such a tenant to pay for new housing in San Francisco.  The City's attempt to turn the mitigation Payment into a plan to compensate tenants for unspecified, non-housing hardships is belied not only by the record, by the text of the law, and by the very name of the mandate ("Rental Payment Differential")[9], but also by the fact that the law already provides for a separate "over 62" and "disability" payment to ameliorate general hardships.

The City does not show how requiring landlords, like the Levins, to hand over a hundred thousand dollars in unrestricted funds to a tenant can possibly "rationally" advance a City interest in providing tenants with affordable housing.  "Rational" means there is a firm basis for the Board of Supervisors to believe that the Payment will secure affordable housing in the city.  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) (noting rational basis review is "not toothless"); *Sylvia Landfield Trust v. City of Los Angeles*, 729 F.3d 1189, 1193 (9th Cir. 2013) (Governmental action is not rationally related if it bears" ""no *substantial* relation"' " to public goals (emphasis added) (quoting *Lebbos v. Judges of Superior Court, Santa Clara Cnty.*, 883 F.2d 810, 818 (9th Cir. 1989) (quoting *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926)))).  But since the law does not require tenants to spend the payment on housing or in San Francisco, it cannot have such a firm belief.  It may have hope that the law will advance the City's interest, but hope is not a rational basis.

Similarly, the City cannot show a rational basis for the retroactive nature of the Ordinance.  What rational basis is there for dramatically increasing the liability of rental owners, like the Levins, who filed to withdraw property prior to enactment of the 2014 Ordinance, thereby frustrating expectations based on prior law, when the Ordinance does not even ensure tenants will use the enhanced payment for housing?  The City does not say.

---

[9] Tellingly, the moderate tenant payments required by the prior 2005 Ordinance are called "relocation" payments, not "Rental Payment Differential" payments.

The City also fails to adequately defend the 2014 Ordinance against Plaintiffs' Ellis Act claims. The Payment is facially invalid under the Ellis Act for the same reasons that it fails the *Nollan* "nexus" test, *Dolan* "rough proportionality" test, and the Due Process rational basis test, namely the lack of a sufficient relationship between requiring unrestricted landlord payments to tenants and the City's desire to secure affordable housing in San Francisco for displaced tenants. Ultimately, the City asks the Court to simply defer to the City and to turn a blind eye to the flaws in the law that prevent it from being sufficiently tailored. But the Constitution requires more and people like the Levins deserve more. The City can come up with a more carefully drafted law, but this one must fall.

## IV

## PLAINTIFFS' FACIAL TAKINGS CLAIMS ARE RIPE

As an afterthought, the City argues that Plaintiffs' takings claims are unripe under the state court exhaustion concept of *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 190 (1985). City's Brief at 25. Plaintiffs provided several reasons for rejecting this argument in their Trial Brief. Plaintiffs' Trial Brief at 13.

Here, Plaintiffs reiterate that the Supreme Court has repeatedly held that *facial takings claims not seeking monetary compensation* are instantly ripe. *See San Remo Hotel, L.P. v. City & County of San Francisco*, 545 U.S. 323, 345-46 (2005) (facial takings claims held instantly ripe because they "requested relief distinct from the provision of 'just compensation'"); *Yee v. City of Escondido*, 503 U.S. 519, 533-34 (1992) (because a takings claim "does not depend on the extent to which petitioners are deprived of the economic use of their particular pieces of property or the extent to which these particular petitioners are compensated, petitioners' facial challenge is ripe"); *Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725, 736 n.10 (1997) (" 'facial' [takings] challenges to regulation are generally ripe the moment the challenged regulation or ordinance is passed"). The Supreme Court has specifically held that a claim resting on *Nollan* "nexus" type arguments is ripe without respect to state court compensation proceedings. *Yee*, 503 U.S. at 534.

Finally, even if some of Plaintiffs' claims were potentially subject to *Williamson County* (they are not), it would be proper for the Court to waive that ripeness doctrine. *Williamson*

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1   *County*'s state compensation doctrine is a discretionary, prudential doctrine.  *Guggenheim v. City*

2   *of Goleta*, 638 F.3d 1111, 1118 (9th Cir. 2010).  A primary prudential concern is the avoidance of

3   inefficient, piecemeal litigation.  *San Remo Hotel*, 545 U.S. at 346; *MacDonald, Sommer & Frates*

4   *v. Yolo Cnty.*, 477 U.S. 340, 350 n.7 (1986).  If *Williamson County* applies, the Court should waive

5   its ripeness doctrine as a matter of judicial economy, for the purpose of litigating all Plaintiffs'

6   facial claims in one proceeding.  *See Town of Nags Head v. Toloczko*, 728 F.3d 391, 399 (4th Cir.

7   2013).

8                                      **CONCLUSION**

9        The Court should enjoin San Francisco Administrative Code Section 39.9A(e)(3)(E)(ii).

10       DATED:  October 1, 2014.

11                                                Respectfully submitted,

12                                                J. DAVID BREEMER
                                                  JENNIFER F. THOMPSON
13

14                                                By _____/s/ J. David Breemer_____
                                                          J. DAVID BREEMER
15

16                                                Attorneys for Plaintiffs

17

18

19

20

21

22

23

24

25

26

27

28

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747