1   DENNIS J. HERRERA, State Bar #139669
    City Attorney
2   WAYNE SNODGRASS, State Bar #148137
    CHRISTINE VAN AKEN, State Bar #241755
3   Deputy City Attorneys
    1 Dr. Carlton B. Goodlett Place
4   City Hall, Room 234
    San Francisco, California 94102-4682
5   Telephone:    (415) 554-4633
    Facsimile:    (415) 554-4699
6   E-Mail:       christine.van.aken@sfgov.org

7   Attorneys for Defendant
    CITY AND COUNTY OF SAN FRANCISCO

8

9

10                  UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12  DANIEL LEVIN; MARIA LEVIN; PARK          Case No. 14-cv-03352-CRB (JSC)
    LANE ASSOCIATES, L.P.; THE SAN
13  FRANCISCO APARTMENT                      **DEFENDANT CITY AND COUNTY OF SAN**
    ASSOCIATION; and THE COALITION FOR       **FRANCISCO'S OPPOSITION TRIAL BRIEF**
14  BETTER HOUSING,
                                             Judge: Hon. Charles R. Breyer
15          Plaintiffs,

16          vs.                              Trial Date:          October 6, 2014

17  CITY AND COUNTY OF SAN
    FRANCISCO,
18
            Defendant.
19

20  DAVID GREENE AND ALL OTHERS
    SIMILARLY SITUATED,
21
            Intervenors.
22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. ii

INTRODUCTION ............................................................................................................1

    I.    CORRECTION CONCERNING APPLICABILITY OF 2014 MITIGATION ORDINANCE TO TENANCIES NOT SUBJECT TO RENT CONTROL............2

    II.    PLAINTIFFS' PRIVATE-PURPOSE ARGUMENT FAILS ................................2

        A.    Promoting Tenant Welfare Is A Legitimate Public Purpose ......................3

        B.    The 2014 Mitigation Ordinance Serves That Legitimate Purpose..............3

        C.    Plaintiffs' Private-Purpose Argument Would Sweep Away 30 Years Of Local Law. ..............................................................................................6

    III.    THE 2014 MITIGATION ORDINANCE DOES NOT "TAKE" PRIVATE PROPERTY UNDER THE TAKINGS CLAUSE ................................................7

        A.    The Ordinance Does Not Take Private Property By Its Mere Enactment ...7

        B.    The Ordinance Does Not Take Private Property Per Se ............................8

        C.    The Ordinance Is Not, On Its Face, An Uncompensated Exactions Taking .....................................................................................................9

    IV.    PLAINTIFFS' TAKINGS CLAIMS ARE UNRIPE...............................................11

    V.    PLAINTIFFS' DUE PROCESS CLAIMS FAIL ..................................................12

    VI.    THE 2014 MITIGATION ORDINANCE IS NOT PREEMPTED BY THE ELLIS ACT........................................................................................................12

    VII.    THERE IS NO FOURTH AMENDMENT SEIZURE CLAIM AT ISSUE IN THIS TRIAL. .....................................................................................................14

CONCLUSION.................................................................................................................14

1

## TABLE OF AUTHORITIES

2
**Federal Cases**

*Action Apartment Ass'n v. Santa Monica Rent Control Bd.*
3      509 F.3d 1020 (9th Cir. 2007) ................................................3, 4

4    *Agins v. City of Tiburon*
      447 U.S. 255 (1980)............................................................4
5

6    *Dolan v. City of Tigard*
      512 U.S. 374 (1994)......................................................9, 10, 11

7    *Eastern Enterprises v. Apfel*
      528 U.S. 498 (1998)...........................................................11
8

9    *F.C.C. v. Florida Power Corp.*
      480 U.S. 245 (1987).............................................................8

10
     *Garneau v. City of Seattle*
11      147 F.3d 802 (9th Cir. 1998) ..............................................9, 10

12   *Guggenheim v. City of Goleta*
      638 F.3d 1111 (9th Cir. 2010) .................................................7
13

14   *Hawaii Hous. Auth. v. Midkiff*
      467 U.S. 229 (1984).............................................................4

15   *Heller v. Doe*
16      509 U.S. 312 (1993).............................................................4

17   *Horne v. U.S. Department of Agriculture*
      750 F.3d 1128 (2014)............................................................9
18

19   *Kelo v. City of New London*
      545 U.S. 469 (2005).............................................................6

20
     *Keystone Bituminous Coal Ass'n v. DeBenedictus*
21      480 U.S. 470 (1987).............................................................7

22   *Lingle v. Chevron U.S.A. Inc.*
      544 U.S. 528 (2005)...........................................................4, 8
23

24   *McClung v. City of Sumner*
      548 F.3d 1219 (9th Cir. 2008) ............................................9, 10

25
     *MHC Financing Ltd. P'ship v. City of San Rafael*
26      714 F.3d 1118 (9th Cir. 2013),
      *cert. denied*, 134 S.Ct. 900 (2014) ..........................................4

27
     *Nollan v. California Coastal Commission*
28      483 U.S. 825 (1987)......................................................9, 10, 11

*Penn Central Transportation Co. v. New York City*
   438 U.S. 104 (1978) ..................................................................................1, 10

*Pennell v. City of San Jose*
   485 U.S. 1 (1988) ...............................................................................................3

*Pension Ben. Guar. Corp. v. R.A. Gray & Co.*
   467 U.S. 717 (1984) .........................................................................................12

*Richardson v. City & County of Honolulu*
   124 F.3d 1150 (9th Cir. 1997) ...........................................................................4

*Ruckelshaus v. Monsanto Co.*
   467 U.S. 986 (1984) .........................................................................................11

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*
   535 U.S. 302 (2002) ...........................................................................................8

*United States v. Riverside Bayview Homes, Inc.*
   474 U.S. 121 (1985) .........................................................................................11

*United States v. Salerno*
   481 U.S. 739 (1987) .....................................................................................5, 12

*Wash. Legal Fdn. v. Legal Fdn. of Wash.*
   271 F.3d 835 (9th Cir. 2001) .............................................................................11

*Yee v. City of Escondido*
   503 U.S. 519 (1992) .....................................................................................8, 10

**State Cases**
*Bullock v. City & County of San Francisco*
   221 Cal.App.3d 1072 (1990) ........................................................................6, 13

*Channing Properties v. City of Berkeley*
   11 Cal.App.4th 88 (1992) ................................................................................13

*Nash v. City of Santa Monica*
   37 Cal.3d 97 (1984) ...........................................................................................1

*Pieri v. City & Cnty. of San Francisco*
   137 Cal.App.4th 886 (2006) ......................................................................3, 6, 13

*Reidy v. City & County of San Francisco*
   123 Cal.App.4th 580 (2004) ............................................................................13

*San Remo Hotel, L.P. v. City & County of San Francisco*
   27 Cal.4th 643 (2002) ......................................................................................13

**State Statutes, Codes & Regulations**

Cal. Gov. Code §§ 7060, et seq. (The Ellis Act) ................................................................ *passim*

Cal. Gov. Code § 7060.1 .............................................................................................................6

Cal. Gov. Code § 7060.1(c) ........................................................................................................5

**San Francisco Statutes, Codes & Ordinances**

S.F. Admin Code § 37.2(r) ..........................................................................................................2

S.F. Admin. Code § 37.2(r)(5) ....................................................................................................2

S.F. Admin. Code § 37.9 .............................................................................................................2

S.F. Admin. Code § 37.9(a)(13) ..................................................................................................2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

Rent control in San Francisco is a complex regulatory system that allocates benefits and burdens among landlords and tenants through an overlapping array of state laws, local ordinances, local regulations, and local adjudicative proceedings.  Prior to 1986, San Francisco imposed rent control on some of its housing stock, and landlords had no way to exit the residential rental business other than by selling their properties.  *See Nash v. City of Santa Monica*, 37 Cal. 3d 97, 104-09 (1984).  In 1986, the California Legislature responded to *Nash* by enacting the Ellis Act, and ever since then San Francisco has required landlords to make mitigation payments to Ellis-evicted tenants, and has regulated units subject to Ellis withdrawals in many other ways that are not challenged by Plaintiffs here.

The 2014 Mitigation Ordinance that Plaintiffs challenge—which, for some landlords, increased the amount of mitigation payments they must make to evicted tenants, and for others resulted in the same payment obligation as under the previously operative ordinance—is but one small piece of this system of regulations in a highly controlled industry.  On its face, it does not take the property of landlords.  Instead, for only some landlords, it raises one existing cost of exiting the rental market— while allowing landlords to capture the often much more valuable benefit of recovering possession of a vacant unit.  Plaintiffs would have this Court strip away all context from the mitigation ordinance, and have this Court evaluate it simply as a transfer of money from a disfavored class to a favored class of people.  Yet Plaintiffs do not contest the legislative record that the Board of Supervisors had before it in enacting the ordinance:  that if it were not for landlords' exercise of Ellis rights, tenants could remain in their rent-controlled tenancies, that San Francisco faces a true crisis of evictions and housing affordability, that the most vulnerable tenants are the most frequent victims of Ellis Act evictions, and that using the Ellis Act to empty a building of tenants and resell it as tenancies-in-common or condominiums is immensely lucrative.  In this context, the mitigation ordinance is not a per se or exactions taking but instead yet another "public program adjusting the benefits and burdens of economic life to promote the common good."  *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978).  It is simply not susceptible to a per se or exactions takings analysis—and yet those

1 | are the only takings challenges that Plaintiffs have asserted as facial challenges, and thus the only

2 | takings challenges at issue in the coming trial.

3 |     For these reasons, and those offered below, this Court should uphold the facial validity of the

4 | mitigation ordinance.

5 |

6 |

7 | **I.     CORRECTION CONCERNING APPLICABILITY OF 2014 MITIGATION ORDINANCE TO TENANCIES NOT SUBJECT TO RENT CONTROL**

8 |

9 |     At the pretrial conference on September 22, 2014, this Court asked whether tenants who do not

10 | enjoy the protections of rent control are entitled to receive mitigation payments under the 2014

11 | Mitigation Ordinance.  The City's counsel answered yes, payments are available to any tenant

12 | displaced by an Ellis Act eviction, but that such evictions would likely be rare because landlords not

13 | subject to rent control are also not required to renew tenants' leases, and therefore in practice will not

14 | have need to invoke the Ellis Act.

15 |     This answer was incorrect.  The 2014 Mitigation Ordinance only applies where tenants are

16 | displaced under San Francisco Administrative Code § 37.9(a)(13), the local Ellis enabling ordinance.

17 | Section 37.9, including § 37.9(a)(13), applies only to "rental units as defined in Section 37.2(r)."

18 | Administrative Code § 37.2(r), in turn, defines "rental units" to *exclude* rental units for which a

19 | certificate of occupancy was issued after the effective date of that ordinance, i.e. 1979.  (S.F. Admin.

20 | Code § 37.2(r)(5).)  Thus, units that are not subject to rent control because they were constructed after

21 | 1979 are also not subject to Ellis evictions or to the mitigation payment requirement.  The City's

22 | counsel apologizes for the error.

23 |

24 | **II.     PLAINTIFFS' PRIVATE-PURPOSE ARGUMENT FAILS**

25 |     Plaintiffs' opening trial brief argues that the 2014 Mitigation Ordinance benefits private

26 | tenants, not the public, because "[t]enants can use the Payment for any personal desire they wish."

27 | Dkt. 51 at 9-10.  This threadbare claim is not enough to overcome the deference this Court owes to the

28 |

City's legislative judgments, or to the obvious rational relationship between a tenant's eviction and the tenant's need to pay for new housing.

### A.      Promoting Tenant Welfare Is A Legitimate Public Purpose

As stated in the legislative history of the 2014 Mitigation Ordinance, the City passed this ordinance to "better mitigate the adverse impacts for people displaced by Ellis Act evictions" "[i]n light of the hardships faced by the increasing number of evicted tenants and the increased difficulty in finding affordable housing following eviction."  Trial Ex. 10 at 10-17.

Plaintiffs essentially concede that these purposes are legitimate, or at least they raise no argument to the contrary.  In any event, case law firmly establishes the point that promoting tenant welfare and preserving housing affordability for existing tenants are legitimate governmental purposes.  *See Pennell v. City of San Jose*, 485 U.S. 1, 13 (1988); *Action Apartment Ass'n v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1023 (9th Cir. 2007); *Pieri v. City & Cnty. of San Francisco*, 137 Cal. App. 4th 886, 893 & n.4 (2006).

In addition, Plaintiffs offer no argument or evidence to contest the extensive testimony and evidence before the Board of Supervisors that housing affordability is a serious problem in San Francisco, that a disproportionate number of tenants subject to Ellis evictions are particularly vulnerable; and that many evicted tenants are likely to face grave difficulties in finding affordable replacement housing.

### B.      The 2014 Mitigation Ordinance Serves That Legitimate Purpose

Plaintiffs' public-use arguments do not take issue with the City's *aims* but with its *means*: they contend that the ordinance does not really serve its aims because it does not require tenants to use their relocation payments for new housing.  This claim fails.

1.      The tightness of the 2014 Mitigation Ordinance's means-end fit is simply not relevant to the Public Use determination at all, and instead belongs to a substantive due process inquiry.  In *Agins v. City of Tiburon*, the Supreme Court held that zoning laws and other government land-use regulations "effect[] a taking" if they do not "substantially advance legitimate state interests." 447 U.S.

255, 260-61 (1980).  But the Supreme Court unanimously overruled *Agins* in 2005.  In *Lingle v. Chevron U.S.A. Inc*., the Court held that the "substantially advance legitimate state interests" test from Agins "prescribes an inquiry in the nature of . . . due process" and "has no proper place in our takings jurisprudence."  544 U.S. 528, 540 (2005).  *See also Action Apartment Ass'n v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1024 (9th Cir. 2007) (in a public use challenge, "'whether the statute actually succeeds is *irrelevant*'") (quoting *Richardson v. City & County of Honolulu*, 124 F.3d 1150, 1159 (9th Cir. 1997)) (emphasis added by *Action Apartment Ass'n*).  Courts are simply not permitted to "second-guess [the City's] chosen means of implementing its indisputably legitimate goals."  *Action Apartment Ass'n*, 509 F.3d at 1024.

2.    Even if evaluating the means-end fit were part of this Court's task under the Public Use Clause challenge, the 2014 Mitigation Ordinance would pass muster.  The City rationally concluded that, when tenants are evicted, they face hardships, including difficulty in finding an affordable new apartment in San Francisco's steep housing market, and that tenants would likely use a mitigation payment triggered by eviction to secure new housing.  Testimony and evidence before the Board of Supervisors established not only that many renters in the City are already severely rent-burdened, but that Ellis evictions disproportionately affect vulnerable renters like seniors and people with disabilities and that significant numbers of evicted tenants are displaced from San Francisco or are forced to accept substandard living arrangements.  Trial Ex. 13 at 2, 4, 7, 26-27.

This evidence is more than sufficient to support the City's determination that a tenant mitigation payment bears a rational relationship to its public purpose.  The City's determination is entitled to "extreme deference."  *MHC Financing Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1129 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 900 (2014).  The 2014 Mitigation Ordinance must be upheld so long as it is "rationally related to a conceivable public purpose."  *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 241 (1984).  "[C]ourts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends."  *Heller v. Doe*, 509 U.S. 312, 321 (1993).  Thus, Plaintiffs' disagreement with the City's policy judgments about whether tenants will or will not use their payments for new housing is simply not reason enough to

invalidate the ordinance. And in any event, Plaintiffs offer no evidence or empirical support that their policy judgments, and not the City's, are correct.

3.     While the City envisioned that tenants would use their mitigation payments to avoid being displaced from San Francisco, tenants could also use their payments to pay for job training to get a better job and afford a higher housing payment, or to buy a reliable car to be used to for a long commute from affordable suburban housing to a job in the city. These are also mitigations of the hardships of eviction; the Ellis Act places no limits on the kind of mitigation that may be provided. Cal. Gov't Code § 7060.1(c). The City believes that the great majority of tenants who lose their rent-subsidized housing through eviction will use their mitigation payments to pay for replacement housing. But the fact that the 2014 Mitigation Ordinance does not limit tenants to this purpose is a virtue, not a vice: it allows tenants to decide what mitigation serves their needs best.

4.     This is a facial challenge. To prevail, Plaintiff "must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Thus, the prospect that a few tenants will use their mitigation payments for non-mitigation purposes does not invalidate the ordinance.

5.     At the pretrial conference, this Court raised the concern that some tenants entitled to receive payment under the 2014 Mitigation Ordinance may be affluent and not in need of assistance to afford replacement housing. That does not diminish the public purpose of the law. Rent control is not means-tested, but no court has invalidated it on this basis (or any other) either facially or as applied. And in any event, there is nothing surprising or unusual about the fact that the 2014 Mitigation Ordinance makes evicted tenants eligible for mitigation payments without regard to their financial station. Many government benefits are awarded without regard to the recipients' means, such as Medicare and discount bus passes for seniors. Thus, the fact that the City is not checking the bank accounts of evicted residents before compelling the mitigation payments is of no constitutional concern.

6.     Plaintiffs attempt to make hay out of a distinction in California cases between mitigations that benefit particular tenants and mitigations that benefit society at large. Pl. Tr. Br. at 12:17-19. This is a red herring. The Ellis Act allows cities to require landlords to mitigate the adverse

impacts of eviction "on persons displaced" by Ellis evictions.  Cal. Gov't Code § 7060.1.  California cases have thus drawn a distinction between unlawful mitigation ordinances that require landlords to pay money into a fund for affordable housing whose benefits are not restricted to displaced people, and lawful mitigation ordinances that require payments or benefits to displaced people.  *See Bullock v. City & County of San Francisco*, 221 Cal. App. 3d 1072 (1990); *Pieri*, 137 Cal. App. 4th 886.  San Francisco's is the latter type, and it does directly benefit tenants who are displaced by the Ellis Act.  But that does not mean that it does not serve a public purpose in doing so.  Indeed, case law clearly establishes that transfers from one private party to another can and often do serve public purposes under the Public Use Clause.  *See, e.g., Kelo v. City of New London*, 545 U.S. 469, 483, 489 (2005).

### C.    Plaintiffs' Private-Purpose Argument Would Sweep Away 30 Years Of Local Law.

Because this is a facial challenge, the amount of payment a landlord would make to a particular tenant under the 2014 Mitigation Ordinance is not relevant.  (And in fact, evidence demonstrates that payments under the ordinance will vary tremendously, from a few thousand dollars to the six-figure numbers that Plaintiffs brandish.  *See* Trial Ex. 28 at 28-124 – 28-125.)  Thus, for purposes of this trial, Plaintiffs argue, as they must, that any payment under the ordinance serves private rather than public purposes.

But that argument applies equally to any unrestricted mitigation payment requirement—a requirement that has been in place in San Francisco for 30 years.  Ever since the Ellis Act passed in 1986, the City and County of San Francisco has required landlords who use the Ellis Act to evict their tenants to make mitigation payments to those tenants.  Stipulated Facts ¶¶ 27-34.  San Francisco has never placed any conditions on tenants' use of that money, and it limited payments to low-income tenants only for so long as it was required to do so by state law.[1]  In fact, the only difference between the 2014 Mitigation Ordinance and the 30 years of local law preceding it is the method of calculating the mitigation payment—a method that, in some cases, results in a greater payment to tenants, but in

---

[1] For a period of time when the Ellis Act limited mitigation payments to low-income tenants only, San Francisco also limited mitigation payments to low-income tenants.  Stipulated Facts ¶¶ 28-30; *Pieri*, 137 Cal.App.4th at 889-90.  But after the Ellis Act was amended to lift that restriction, San Francisco likewise removed the income condition.  Trial Ex. 9 at 9-27 – 9-28.

almost 20% of the cases the Rent Board saw this spring, resulted in the same payment to tenants as under the prior law.  Trial Ex. 28, at 28-3, ¶ 6.

Thus, if Plaintiffs' argument were correct, San Francisco has been violating the Public Use Clause for 30 years, unchecked.  The breadth of Plaintiffs' argument, and its extreme consequences, only demonstrates how untethered from caselaw this argument is.

## III.   THE 2014 MITIGATION ORDINANCE DOES NOT "TAKE" PRIVATE PROPERTY UNDER THE TAKINGS CLAUSE

### A.   The Ordinance Does Not Take Private Property By Its Mere Enactment

Plaintiffs admit that, in the takings context, a facial challenge can only succeed if " 'the mere enactment of a statute constitutes a taking.' "  Pl. Tr. Br. at 13:9-10 (quoting *Keystone Bituminous Coal Ass'n v. DeBenedictus*, 480 U.S. 470, 494 (1987)).  Thus, according to Plaintiffs, " '[i]n the takings context, the basis of a facial challenges is that the very enactment of the statute has reduced the value of the [plaintiff's] property or has effected a transfer of a property interest.' "  Pl. Tr. Br. at 13:11-13 (quoting *Guggenheim v. City of Goleta*, 638 F.3d 1111, 1119 (9th Cir. 2010) (en banc) (additional internal quotation marks omitted).

Plaintiffs cannot meet the test that they themselves articulate.  They have eschewed any facial regulatory takings claim based on a theory that the mere enactment of the 2014 Mitigation Ordinance has reduced the value of their property.  Thus, to prevail, they must prove that "the very enactment of the statute . . . has effected a transfer of a property interest."  It plainly does not.  Plaintiffs have not yet made any payments under the ordinance, and the ordinance did not affect their tenants' existing rights under the rent control laws to continue to occupy their units.  As this Court noted when it rejected Plaintiffs' request for a temporary restraining order, no transfer of money was imminent at that time, and no transfer has yet occurred.  It simply makes no sense to say that the enactment of the ordinance itself transferred property.

**B.      The Ordinance Does Not Take Private Property Per Se**

The 2014 Mitigation Ordinance is not a per se taking.  Under the per se takings approach, just compensation is automatically owed in certain "relatively narrow" circumstances. *Lingle*, 544 U.S. at 537-38.  These circumstances include the government's physical occupation of property and the government's adoption of regulations that are so pervasive as to be tantamount to a physical occupation. *Id.* at 537-48; *see Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 324 (2002) (noting that treating all land-use regulations as "*per se* takings would transform government regulation into a luxury few governments could afford.  By contrast, physical appropriations are relatively rare, easily identified, and usually represent a greater affront to individual property rights").

Straining to shoehorn the Mitigation Ordinance into one of the two *Lingle* categories, Plaintiffs contend that the City has worked a taking of either (1) their right to possess their property or (2) their money.

The 2014 Mitigation Ordinance does not affect a taking of Plaintiffs' interest in possession of their property.  At bottom, this claim boils down to an argument that, if Plaintiffs do not pay their mitigation payments, they will continue to be subject to the status quo of rent control.  That claim is time-barred, as rent control has been in place in San Francisco for decades, and San Francisco has required landlords to pay mitigation to tenants in order to exercise their Ellis Act prerogatives since 1986.  Stipulated Facts ¶¶ 27-34.  Moreover, this claim fails as a matter of law because the City has not physically compelled an invasion. On the contrary, the Plaintiffs consented to the establishment of a tenancy, which means that rent control is properly analyzed as a regulatory taking.  *Yee v. City of Escondido*, 503 U.S. 519, 528 (1992); *F.C.C. v. Florida Power Corp.*, 480 U.S. 245, 252 (1987).  In any event, the Plaintiffs are free to discontinue renting and pay the mitigation payments.  The only effect of the 2014 Mitigation Ordinance is to raise the amount of the mitigation payments under certain circumstances.  Price increases, without more, are not takings.

Nor does the 2014 Mitigation Ordinance affect a per se taking of money.  Instead, it requires Plaintiffs to make a choice between evicting their tenants and paying money, or continuing to rent units to their tenants.  Such a choice may be analyzed as a regulatory taking or an exactions taking, but

there is no precedent for analyzing a payment requirement as a taking, completely divorced from the regulatory context in which it arises.  In fact, the Ninth Circuit recently rejected the exact argument that the Plaintiffs advance in their trial brief. In *Horne v. U.S. Department of Agriculture*, that court held that Koontz did not "alter[] the doctrinal landscape" so as to make any monetary payment into a per se taking.  750 F.3d 1128, 1138 n.11 (2014). On the contrary, *Horne* interpreted *Koontz not* to require a per se approach in a case involving a general monetary penalty imposed when growers failed to hold raisins off the market; *Horne* instead analyzed the penalty under an exactions rubric.  *Id.* at 1137.

**C.    The Ordinance Is Not, On Its Face, An Uncompensated Exactions Taking**

1.    *Garneau v. City of Seattle* forecloses Plaintiffs' claim that forced relocation payments to tenants are, on their face, *Nollan/Dolan* exactions.  147 F.3d 802, 811 (9th Cir. 1998) (Brunetti, J.); *id.* at 813 (Williams, J.).  As *Garneau* discussed, facial takings challenges must show that the enactment of the law itself worked a taking.  In *Garneau*, the Ninth Circuit applied this standard to hold that "*Dolan* analysis cannot be applied in facial takings claims." 147 F.3d at 811 (Brunetti, J.); *see id.* at 820 (Williams, J., concurring).  This is true because *Dolan* looks to "whether the government's exaction was too costly" in the case at hand (a highly fact-specific inquiry), whereas facial challenges must allege that "the mere enactment of a statute constitutes a taking" (a highly generalist inquiry).  *Id.* at 811 (Brunetti, J.) (internal quotation marks and citation omitted).

Plaintiffs contend that *Garneau*, while barring facial *Dolan* claims, "implicitly accepts" facial *Nollan* claims.  Pl. Trial Br. at 17.  That is not the law.  The critical holding in *Garneau* was that a facial challenge must allege that "the mere enactment of a statute constitutes a taking."  147 F.3d at 811 (Brunetti, J.).  This holding does not vary depending on whether the underlying claim sounds in *Nollan* or *Dolan*.  Indeed, the Ninth Circuit has subsequently explained that "two of the three *Garneau* judges agreed that *Nollan/Dolan* did not apply to the permit requirement."  *McClung v. City of Sumner*, 548 F.3d 1219, 1228 n.4 (9th Cir. 2008), abrogated in part on other grounds by *Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586 (2013).

1    Moreover, *Garneau* upheld a Seattle tenant relocation payment ordinance against a

2    *Nollan/Dolan* facial challenge. Thus, under *Garneau*, a challenge to an ordinance requiring payments

3    to evicted tenants is barred by Ninth Circuit precedent.

4        2.    Independently, the 2014 Mitigation Ordinance is not subject to the *Nollan/Dolan*

5    analysis because it is a legislatively imposed condition, not an ad hoc adjudicative condition.

6    Legislatively imposed conditions are analyzed under the *Penn Central* factors rather than under the

7    *Nollan/Dolan* test. *See McClung*, 548 F.3d at 1222 (noting that *Nollan/Dolan* is not the proper

8    framework for analyzing a "legislative, generally applicable development condition that does not

9    require the owner to relinquish rights in the real property"); *see also Dolan*, 512 U.S. at 385 (noting

10   difference between ad hoc permit conditions and "essentially legislative determinations"). There is a

11   reason for the difference. As the Court discussed in *Dolan*, ad hoc adjudicative conditions, imposed

12   on a case-by-case basis on individual development projects subject to discretionary government

13   approval, raise more potential for the government to exact a high price from vulnerable individual

14   property owners. *Id.* By contrast, across-the-board laws that apply to everyone who is similarly

15   situated present "less chance of abuse." *McClung*, 548 F.3d at 1222. Thus, *legislative* conditions like

16   this one are analyzed under the less stringent *Penn Central* test for regulatory takings. Plaintiffs make

17   no argument that the ordinance violates *Penn Central* on its face.

18       3.    In addition, *Nollan/Dolan* does not apply unless the government has demanded an

19   exaction that it could directly compel. *Dolan*, 512 U.S. at 384; *Nollan*, 483 U.S. at 831. It is black

20   letter law that rent control is not a taking. *Yee*, 503 U.S. at 528. In this case, the City has compelled

21   the Plaintiffs to pay two years' worth of the benefits of rent control to their evicted tenants in the form

22   of a mitigation payment. Since the City could have directly compelled the payment of these benefits

23   in the form of rent control, it has not imposed an unconstitutional condition by indirectly compelling

24   the same thing.

25       4.    Even if *Nollan/Dolan* did provide the proper framework in this case, the 2014

26   Mitigation Ordinance would survive. There is a sufficient "nexus" between the mitigation payments

27   and the City's interest in mitigating the consequences of eviction, *Nollan*, 483 U.S. at 836, and there is

28   a "rough proportionality" between the City's interest and the exaction, *Dolan*, 512 U.S. at 391.

1  Plaintiffs argue that there is no nexus here because the City is trying to make individual landlords

2  solve an affordability crisis that they did not create.  That is specious, and Plaintiffs do not get to name

3  the City's purpose and then declare there is no nexus to that purpose.  The City is trying to mitigate the

4  adverse impacts on particular tenants who lose their rent-controlled housing.  The 2014 Mitigation

5  Ordinance's payment requirement is calibrated to bear a very close relationship to those impacts.  On a

6  facial challenge, that is enough.

7

8  **IV.    PLAINTIFFS' TAKINGS CLAIMS ARE UNRIPE**

9          Plaintiffs argue that they need not ripen their per se and *Nollan/Dolan* takings challenges.  Pl.

10  Tr. Br. at 13-14.  Their arguments lack merit.

11          With respect to money takings claims, it is true that courts have not required a plaintiff to seek

12  dollar-for-dollar compensation from the government when the government appropriates a fund *for

13  itself*.  Pl. Tr. Br. at 13:23-14:2.  But that is not what the 2014 Mitigation Ordinance does.  It requires

14  landlords to pay money *to their tenants*.  Plaintiffs offer no reason why it would be pointless to ask

15  San Francisco to reimburse them for that money, or why they are excused from meeting the prudential

16  ripeness requirement.[2]

17          Plaintiffs also argue that they need not seek compensation from the state courts because what

18  they want is an injunction, not compensation.  But as the City demonstrated in its opening brief,

19  equitable relief is not available in takings cases.  If the government has appropriated private property

20  for a public purpose, it may have to pay for that privilege, but it is permitted to do so.  *Ruckelshaus v.

21  Monsanto Co*., 467 U.S. 986, 1016 (1984); *United States v. Riverside Bayview Homes, Inc.*, 474 U.S.

22  121, 127-28 (1985); *Wash. Legal Fdn. v. Legal Fdn. of Wash.*, 271 F.3d 835, 849 (9th Cir. 2001).

23  Thus, Plaintiffs' demand for an injunction has no basis, and this does not excuse them from complying

24

25

26          [2] In support of their arguments, Plaintiffs here and elsewhere cite repeatedly to the plurality
opinion in *Eastern Enterprises v. Apfel*, 528 U.S. 498 (1998), without once mentioning they that are
27  citing to a four-Justice plurality and not to a controlling opinion of the Supreme Court.  They neglect
to note that the plurality's analysis was rejected by Justice Kennedy's concurring opinion and by the
28  four dissenting Justices.

1  with the prudential ripeness requirement that they seek compensation in state court before seeking it

2  from the federal courts.

3

4  **V.      PLAINTIFFS' DUE PROCESS CLAIMS FAIL**

5          Plaintiffs' due process arguments are *entirely* based on their claim that the 2014 Mitigation

6  Ordinance operates retroactively on property owners who initiated an Ellis Act eviction, but did not

7  complete it, before the ordinance took effect.  Their trial brief makes no argument that the ordinance

8  violates the due process rights of any other owners.  That is fatal to their due process claims on a facial

9  challenge, since a facial challenge must demonstrate that *all* applications of a law are unconstitutional,

10 not merely applications to a narrow class of property owners who initiated Ellis proceedings shortly

11 before the ordinance was adopted.  *Salerno*, 481 U.S. at 745.

12         But in any event, their claim lacks merit.  As the City has repeatedly argued, and Plaintiffs

13 have never addressed, the ordinance is not retroactive because it only operates on owners who oust

14 their tenants from possession after its effective date.  Owners who do not wish to be subject to the

15 ordinance can simply refrain from completing the Ellis eviction that they initiated before the ordinance

16 was passed.

17         And in any event, even if the ordinance were retroactive, it would pass muster.  On a

18 retroactivity due process challenge, the test is whether the retroactive application of the ordinance

19 itself has a rational basis.  *See Pension Ben. Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729-30

20 (1984) ("The retroactive aspects of legislation, as well as the prospective aspects, must meet the test of

21 due process . . . .  But that burden is met simply by showing that the retroactive application of the

22 legislation is itself justified by a rational legislative purpose.").  Tenants who are evicted face adverse

23 impacts from eviction whether their owner initiated the eviction before or after the ordinance's

24 effective date.  The ordinance serves a rational legislative purpose in either case.

25

26 **VI.     THE 2014 MITIGATION ORDINANCE IS NOT PREEMPTED BY THE ELLIS ACT**

27         1.      Plaintiffs argue that mitigation payments under the 2014 Mitigation Ordinance do not

28 bear a reasonable relationship to the adverse impacts inflicted on a tenant by eviction, and therefore

the payments are beyond the City's power to compel, and therefore the payments are preempted by the Ellis Act.  Pl. Tr. Br. at 23.

This makes no sense.  This is an argument that the City lacks the police power to enact the 2014 Mitigation Ordinance, not an argument that it is preempted by the Ellis Act.  Plaintiffs have not made a state-law police power claim in their complaint, nor do they offer any compelling support for such a claim in their trial brief.  They offer instead a bare cite to case law stating that there must be a reasonable relationship between a mitigation payment demand and the harms sought to be mitigated. *See San Remo Hotel, L.P. v. City & County of San Francisco*, 27 Cal. 4th 643, 671 (2002).  But in *San Remo*, the California Supreme Court *approved* a requirement that developers who take residential hotel units off the rental market must pay for replacement units to be constructed, *id.* at pp. 672-73—a requirement similar in kind but more stringent than the one San Francisco imposes here, in requiring property owners to pay an amount equal to only two years' worth of replacement housing for evicted tenants.  *San Remo* offers no help to Plaintiffs.

2. And in any event, Plaintiffs' facial preemption claim fails under clear California appellate authority.  At least some applications of the 2014 Mitigation Ordinance are not preempted— those that result in the same amount of payment to tenants as tenants would have received under the 2005 ordinance that preceded it.  *See Pieri*, 137 Cal. App. 4th at 889.  This is a significant number of applications; nearly 20% of the Ellis eviction notices filed between February 1, 2014 and August 31, 2014, fall into this category of non-preempted applications.  On a facial challenge, all or nearly all applications must be preempted for Plaintiffs to succeed.  They do not meet that standard.

3. Furthermore, California cases make clear that a mitigation-payment requirement is only preempted by the Ellis Act when it imposes a "prohibitive price" on the exercise of Ellis Act prerogatives by effectively compelling a landlord to remain in the residential rental business.  *See Pieri*, 137 Cal. App. 4th at 893 & n.4; *see also Reidy v. City & County of San Francisco*, 123 Cal. App. 4th 580, 590 (2004); *Channing Properties v. City of Berkeley*, 11 Cal. App. 4th 88, 100 (1992) (overruled on other grounds by statute as stated in *Pieri*, 137 Cal. App. 4th at 891); *Bullock*, 221 Cal. App. 3d at 1101.  Plaintiffs do not allege that the 2014 Mitigation Ordinance imposes a prohibitive price on withdrawal.  Nor could they:  if it did, they would be eligible to seek

administrative relief from any undue financial burdens imposed by the ordinance, and their facial challenge would fail because they failed to exhaust administrative remedies.

## VII. THERE IS NO FOURTH AMENDMENT SEIZURE CLAIM AT ISSUE IN THIS TRIAL.

In their trial brief, Plaintiffs argue that the Fourth Amendment forbids the 2014 Mitigation Ordinance as an unlawful seizure of their property.  This issue is not before the Court at the coming trial.  Plaintiffs pleaded a Fourth Amendment violation only as applied to them and not as a facial claim.  Dkt. 1 at ¶¶ 168-71.  This Court has stayed litigation of Plaintiffs' as-applied challenges pending resolution of their facial challenge.  Dkt. 40.

## CONCLUSION

For the reasons offered above and in San Francisco's opening trial brief, San Francisco respectfully submits that judgment should be entered in its favor on all of Plaintiffs' facial claims.

Dated:  October 1, 2014

DENNIS J. HERRERA
City Attorney
WAYNE SNODGRASS
CHRISTINE VAN AKEN
Deputy City Attorneys

By: __/s/Christine Van Aken_____
CHRISTINE VAN AKEN

Attorneys for Defendant CITY AND COUNTY OF SAN FRANCISCO