J. DAVID BREEMER, No. 215039
E-mail:  jdb@pacificlegal.org
JENNIFER F. THOMPSON, No. 280885
E-mail:  jft@pacificlegal.org
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone:  (916) 419-7111
Facsimile:  (916) 419-7747

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| DANIEL LEVIN; MARIA LEVIN; PARK LANE ASSOCIATES, L.P.; THE SAN FRANCISCO APARTMENT ASSOCIATION; and THE COALITION FOR BETTER HOUSING, <br><br> Plaintiffs, <br><br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO, <br><br> Defendant, <br><br> and <br><br> DAVID GREENE and ALL OTHERS SIMILARLY SITUATED, <br><br> Intervenors. | No. 3:14-CV-03352-CRB <br><br> **PLAINTIFFS' (CORRECTED) TRIAL REPLY BRIEF** <br><br> Trial Date:  October 6, 2014 <br> Judge:  Hon. Charles R. Breyer <br> Courtroom 6, 17th Floor |

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA  95814
(916) 419-7111 FAX (916) 419-7747

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.   THE ORDINANCE FAILS *PENN CENTRAL*
     REGULATORY TAKINGS ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  THE CITY HAS YET TO REBUT PLAINTIFFS'
     *NOLLAN/DOLAN* ARGUMENTS ON THE MERITS
     AND ITS LEGISLATIVE EXACTION DEFENSE FAILS . . . . . . . . . . . . . . . . . . . . . . . 3

III. EVEN IF THE HIGHER SCRUTINY OF *NOLLAN* AND
     *DOLAN* DOES NOT APPLY, THE PRE-*NOLLAN* REASONABLE
     RELATIONSHIP TEST APPLIES AND DEFEATS THE ORDINANCE . . . . . . . . . . 5

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Agins v. City of Tiburon*, 447 U.S. 255 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

*Armstrong v. United States*, 364 U.S. 40 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

*Aunt Hack Ridge Estates, Inc. v. Planning Comm'n*, 273 A.2d 880 (Conn. 1970) . . . . . . . . .  5

*Cienega Gardens v. United States*, 331 F.3d 1319 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . 2-3

*Commercial Builders of Northern California v. City of Sacramento*,
   941 F.2d 872 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*David Hill Development, LLC v. City of Forest Grove*,
   688 F. Supp. 2d 1193 (D. Or. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5

*Dolan v. City of Tigard*, 512 U.S. 374 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

*Eastern Enterprises v. Apfel*,  524 U.S. 498 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3

*Guggenheim v. City of Goleta*, 638 F.3d 1111 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . .  2

*Koontz v. St. Johns River Water Management District*, 133 S. Ct. 2586 (2013) . . . . . . . . . . .  4

*Nollan v. California Coastal Commission*, 483 U.S. 825 (1987)  . . . . . . . . . . . . . . . . . . . . . . 1, 3

*Palazzolo v. Rhode Island*, 533 U.S. 606 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

*Parks v. Watson*, 716 F.2d 646 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*Penn Central Transportation Company v. New York City*, 438 U.S. 104 (1978) . . . . . . . . . . 1-2

*Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393 (1922) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

*Philip Morris, Inc. v. Reilly*, 312 F.3d 24 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3

*Town of Longboat Key v. Lands End, Ltd.*, 433 So. 2d 574 (Fla. Dist. Ct. App. 1983) . . . . . .  5

*Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926) . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943) . . . . . . . . . . . . . . 3-4

*Yee v. City of Escondido*, 503 U.S. 519 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

**INTRODUCTION**

It has been clear for some time that the 2014 Ordinance and its enhanced Payment violates *Nollan v. California Coastal Commission*, 483 U.S. 825 (1987), and *Dolan v. City of Tigard*, 512 U.S. 374 (1994), and other precedent, due to the lack of a clear connection between the Payment and the impact of withdrawal of rental units.  Nevertheless, the City's briefs have totally failed to identify a real "nexus" between the Payment mandate and the city housing needs of displaced tenants.  It has not explained how anything but a speculative, and insufficient, nexus exists when tenants need not use the Payment for housing and need not use it in San Francisco.  Nor has the City rebutted Plaintiffs' argument that the Payment is not "roughly proportionate" to the impact of rental withdrawal on tenants because it is not limited to relocation costs, fails to include any (income) means requirement for recipient tenants, and (inexplicably) requires rental owners to subsidize an entire two years of a tenant's rents after the tenant leaves, rather than say, the first month.

Instead, the City remains content to rest on conclusory assertions and alleged procedural barriers.  But these fail.  An exaction that is not tailored in any sense to the impact of the regulated property use is tantamount to extortion, and the legislative origin of the exaction does not change that fact.

The Ordinance also fails under the regulatory takings analysis of *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 124 (1978).  Based on very recent research, it is apparent the *Penn Central* issue is properly before the Court based on Plaintiffs' general takings allegations.  *Yee v. City of Escondido*, 503 U.S. 519 (1992) (different takings theories need not be presented as separate claims, but  can be raised under a general takings allegation).  This corrected brief is designed to more fully address the *Penn Central* issue.[1]

/// 

/// 

/// 

---

[1]  This brief has been corrected to take account of the Court's very recent clarification that it desires the parties to apply a *Penn Central* takings analysis to the Ordinance on its face.  [DE 84].

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA  95814
(916) 419-7111  FAX (916) 419-7747

**ARGUMENT**

**I**

**THE ORDINANCE FAILS**
***PENN CENTRAL* REGULATORY TAKINGS ANALYSIS**

This Court has asked the parties to analyze the 2014 Ordinance as a regulatory taking. under *Penn Central*, 438 U.S. at 124. DE 70, 84. A property regulation will cause a taking under *Penn Central* depending on the economic impact of the regulation, the degree to which it frustrates investment-backed expectations and the character of the governmental action. *Id.* This test can be applied facially. *Guggenheim v. City of Goleta*, 638 F.3d 1111, 1115 (9th Cir. 2010) (en banc); *Philip Morris, Inc. v. Reilly*, 312 F.3d 24, 30-31 (1st Cir. 2002) (adjudicating facial takings claim under *Penn Central*); *Cienega Gardens v. United States*, 331 F.3d 1319, 1323 (Fed. Cir. 2003) (same). The 2014 Ordinance fails the *Penn Central* test on its face.

The investment-backed expectations inquiry is a primary factor. The Ninth Circuit has treated this issue as a legal question, *Guggenheim*, 638 F.3d at 1120-21. When a property owner acquires and seeks to use property prior to enactment of the challenged law, the owner has protected expectations. *Id.*; *see also, Palazzolo v. Rhode Island*, 533 U.S. 606, 633 (2001) (O'Connor, J., concurring).

Here, enactment of the 2014 Ordinance frustrated the expectations of the property owners like Levins and Park Lane because it retroactively imposed a new Payment mandate vastly different than any prior obligation. Rental owners have acquired units and operated for years in reasonable expectation that they may have moderate tenant "relocation" liability, under existing law, if they leave the market. The 2014 Ordinance suddenly and drastically unsettled such expectations. This is particularly true for those, like the Levins, that filed to withdraw rental units prior to enactment of the Ordinance. The Levins both acquired their property and filed to withdraw their two-unit home before the new Payment mandate. The 2005 Ordinance in place at the time the Levins filed to withdraw required only that they pay their tenant a "relocation" fee of approximately $9,000. They thus had a reasonable expectation of such limited liability. The enactment of the new, retroactively enforced Payment mandate destroyed this expectation. *Eastern*

P̲ACIFIC L̲EGAL F̲OUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

1  *Enterprises v. Apfel*,  524 U.S. 498, 532-35 (1998); *Cienega Gardens*, 331 F.3d at 1346-48.

2          Second, the economic impact on Plaintiffs is substantial. The City concedes the law

3  requires the Levins to pay $117,000 to a single tenant and requires Park Lane to pay more than

4  $1,000,000.  Third, and finally, the character of the Ordinance is consistent with a taking for

5  several reasons:  (1) the Payment mandate burdens Plaintiffs' right to exclusively occupy their

6  property, a fundamental right that is protected under federal and state law; (2) the Payment

7  mandate unfairly singles out Plaintiffs to remedy a general tenant "affordability crisis," that

8  "should be borne by the public as a whole," *Armstrong v. United States*, 364 U.S. 40, 49 (1960),

9  and (3) the Payment is not tailored to the impact of Plaintiffs' withdrawal of property from the

10  rental market on tenants. The Ordinance therefore fails the *Penn Central* takings analysis. *Eastern*

11  *Enterprises*, 524 U.S. at 537, *Philip Morris*, 312 F.3d at 46.

**II**

**THE CITY HAS YET TO REBUT PLAINTIFFS'**
***NOLLAN/DOLAN* ARGUMENTS ON THE MERITS**
**AND ITS LEGISLATIVE EXACTION DEFENSE FAILS**

15          The City's primary defense against Plaintiffs' *Nollan/Dolan* challenge to the Ordinance is

16  that the heightened means-ends scrutiny articulated in *Nollan* and *Dolan* does not apply to

17  exactions enacted by law.  City's Opposition Trial Brief at 10.  This concept is contrary to Ninth

18  Circuit precedent, Plaintiffs' Trial Response Brief at 7-8, and has never been endorsed by the

19  Supreme Court.  Indeed, in *Nollan*, the Supreme Court favorably cited a number of cases involving

20  legislated exactions in articulating the "nexus" test.  483 U.S. at 839-40.  Federal courts have

21  applied *Nollan* and *Dolan* to strike down laws, *Philip Morris*, 312 F.3d at 46-48.

22          Yet, there is something even more fundamentally wrong about the City's "no legislative

23  exactions scrutiny" argument: its incompatibility with the Constitution itself.  The basic intent of

24  the Bill of Rights is, after all, to protect individuals against the usurpation of their rights by

25  majorities wielding the *legislative power*.  As stated in *West Virginia State Board of Education v.*

26  *Barnette*, 319 U.S. 624, 638 (1943):

27  ///

28  ///

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA  95814
(916) 419-7111 FAX (916) 419-7747

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

> The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts. One's right to life, liberty, and property . . . and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections.

The idea that constitutional scrutiny of property invasions waxes or wanes depending on whether the invasion occurs by law or not is inimical to the very foundation of the Constitution.

The City's "no legislative scrutiny" argument is also incompatible with the history of constitutional adjudication. Equal Protection, First Amendment, and Due Process rights typically hinge on the application of a means-ends test similar to that in *Nollan* and *Dolan* in, and courts have no hesitation to apply such tests to legislative acts. What basis is there for exempting legislation only from the *Nollan/Dolan* means-ends takings test? There is none. *Dolan*, 512 U.S. at 392 ("We see no reason why the Takings Clause of the Fifth Amendment, as much a part of the Bill of Rights as the First Amendment or Fourth Amendment, should be relegated to the status of a poor relation in these comparable circumstances."). The Court has distinguished the *Dolan* test only from the standards applicable to legislated *zoning* disputes, *id.* at 385,[2] which this is surely not. This is a straightforward monetary exactions case, and, as the Supreme Court recently held (without caveat), "'monetary exactions' must satisfy the nexus and rough proportionality requirements of *Nollan* and *Dolan*." *Koontz v. St. Johns River Water Management District*, 133 S. Ct. 2586, 2599 (2013).

Thus, the dispositive issue is the merits question: does the City have any argument that can sustain the 2014 Ordinance under the *Nollan/Dolan* "nexus" and "rough proportionality" tests? The answer is no. The City offers nothing except bare and unsupported conclusions that the 2014 Ordinance meets the *Nollan/Dolan* test. *See* City's Opposition Trial Brief at 10. This is not enough. *See, e.g, David Hill Development, LLC v. City of Forest Grove*, 688 F. Supp. 2d 1193, 1210-11 (D. Or. 2010).

---

[2]  In *Dolan*, the Court cited *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926); *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 413 (1922), and *Agins v. City of Tiburon*, 447 U.S. 255, 260 (1980), in stating that the "legislative determinations classifying entire areas of the city" in such cases were not "the sort of land use regulations" subject to heightened exactions scrutiny. *Dolan*, 512 U.S. at 385. None of the cases involved an exaction. All were instead typical zoning cases.

PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, CA 95814
(916) 419-7111 FAX (916) 419-7747

## III

### EVEN IF THE HIGHER SCRUTINY OF *NOLLAN* AND *DOLAN* DOES NOT APPLY, THE PRE-*NOLLAN* REASONABLE RELATIONSHIP TEST APPLIES AND DEFEATS THE ORDINANCE

The City has spent so much energy trying (unsuccessfully) to knock out *Nollan* and *Dolan* that it has neglected to consider whether its Ordinance can survive pre-*Nollan* exaction scrutiny. It cannot. Even without *Nollan* and *Dolan*, an exaction must bear a reasonable relationship to the social impact of the proposed property use. *Commercial Builders of Northern California v. City of Sacramento*, 941 F.2d 872, 873-74 (9th Cir. 1991); *Parks v. Watson*, 716 F.2d 646, 653 (9th Cir. 1983) (exaction "should have some reasonable relationship to the needs created by the subdivision").

Here, there is no reasonable relationship between the enhanced Payment and the purported goal of helping displaced tenants get housing in San Francisco because tenants do not have to use the money for housing and do not have to spend it in San Francisco. The argument that some tenants might use the money in the desired way does not create a reasonable relationship, it creates a speculative one.

Notably, no court has ever held that the pre-*Nollan* "reasonable relationship" test is inapplicable to legislative exactions. Courts instead regularly applied that test to legislation. *See Commercial Builders*, 941 F.2d at 873-74; *Aunt Hack Ridge Estates, Inc. v. Planning Comm'n*, 273 A.2d 880, 885 (Conn. 1970); *Town of Longboat Key v. Lands End, Ltd.*, 433 So. 2d 574, 576 (Fla. Dist. Ct. App. 1983).

DATED: October 3, 2014.

Respectfully submitted,
J. DAVID BREEMER
JENNIFER F. THOMPSON

By _____/s/ J. David Breemer_____
      J. DAVID BREEMER

Attorneys for Plaintiffs