DENNIS J. HERRERA, State Bar #139669
City Attorney
WAYNE SNODGRASS, State Bar #148137
CHRISTINE VAN AKEN, State Bar #241755
Deputy City Attorneys
1 Dr. Carlton B. Goodlett Place
City Hall, Room 234
San Francisco, California 94102-4682
Telephone: (415) 554-4633
Facsimile: (415) 554-4699
E-Mail: christine.van.aken@sfgov.org

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| DANIEL LEVIN; MARIA LEVIN; PARK LANE ASSOCIATES, L.P.; THE SAN FRANCISCO APARTMENT ASSOCIATION; and THE COALITION FOR BETTER HOUSING, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY AND COUNTY OF SAN FRANCISCO, <br><br> Defendant. | Case No. 14-cv-03352-CRB (JSC) <br><br> **DEFENDANT CITY AND COUNTY OF SAN FRANCISCO'S REPLY TRIAL BRIEF** <br><br> Judge: Hon. Charles R. Breyer <br><br> Trial Date: October 6, 2014 |
|---|---|
| DAVID GREENE AND ALL OTHERS SIMILARLY SITUATED, <br><br> Intervenors. | |

In its opening and opposition trial briefs, the City demonstrated why the facial challenges Plaintiffs pleaded in their complaint fail as a matter of law. The City will not recap those arguments here, but files this Reply Trial Brief to address the Court's order that the parties address at trial whether the 2014 Mitigation Ordinance, on its face, works a regulatory taking of the property of landlords throughout San Francisco.

As an initial matter, Plaintiffs did not assert in their complaint that the 2014 Mitigation Ordinance, on its face, is a regulatory taking requiring the City to compensate every landlord in the City affected by it.[1] This Court should not grant relief that is broader than what the Complaint requested.

But more importantly, the 2014 Mitigation Ordinance does not, on its face, effect a regulatory taking of the property of every landlord subject to it. The bar for finding a regulatory taking in the landlord-tenant context is extremely high; the test is intended to identify regulatory burdens so severe that the regulatory action is "functionally equivalent to the classic taking in which government directly appropriates private property." *Lingle v. Chevron USA*, 544 U.S. 528, 539 (2005). Plaintiffs' allegations, and their proof, do not clear that high bar.

Under *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978), courts identify regulatory takings using an "essentially ad hoc, factual inquir[y]." *Id.* at 124. Relevant factors include "[t]he economic impact of the regulation on the claimant . . ., the extent to which the regulation has interfered with distinct investment-backed expectations," and the extent to which "the interference with property can be characterized as a physical invasion by government . . . [rather] than . . . when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Id.*

Because regulatory takings inquiries are so fact-intensive, they are hard to square with a facial challenge, where a plaintiff must show that each and every application of a particular law violates the constitutional provision at issue. *United States v. Salerno*, 481 U.S. 739, 745 (1987). For that reason,

---

[1] Plaintiffs actually do not seek compensation for any alleged taking, but instead seek injunctive relief that the City may not enforce the ordinance. This is not a valid remedy for a regulatory taking; the only relief available is compensation. *See, e.g., Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984)

the Ninth Circuit and the Supreme Court have never held that a regulatory takings claim may be brought as a facial challenge.  *See Guggenheim v. City of Goleta*, 638 F.3d 1111, 1118 n.32 (9th Cir. 2010) (en banc); *MHC Financing Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1126 n.3 (9th Cir. 2013); *Laurel Park Cmty., LLC v. City of Tumwater*, 698 F.3d 1180, 1188-89 (9th Cir. 2012).

But even if such a claim can be brought, it is the very rare law whose mere enactment cuts property values so steeply that it is tantamount to a physical invasion.  In the takings context, "the basis of a facial challenge is that the very enactment of the statute has reduced the value of the property." *Guggenheim*, 638 F.3d at 1119 (internal quotation marks and citation omitted).  Plaintiffs, who bear the burden of proof, offer no evidence at all to suggest that the enactment of the 2014 Mitigation Ordinance reduced the value of their property or of any property in San Francisco.  On that basis alone, the Court should enter judgment against them on this claim.

Moreover, application of the *Penn Central* factors to the facts that are before the Court demonstrates that the enactment of the 2014 Mitigation Ordinance did not effect a regulatory taking of the property of landlords throughout San Francisco.  The first *Penn Central* factor is "[t]he economic impact of the regulation on the claimant."  *Penn Central,* 438 U.S. at 124.  The City's evidence demonstrates that, for many landlords, the amount of mitigation payments they will be required to pay under the 2014 Mitigation Ordinance is not large—in nearly 20% of the Ellis Act eviction notices filed with the Rent Board between February 1, 2014 and August 31, 2014, the mitigation payment amount calculated according to the Controller's formula is *lower* than the payment required by the 2005 mitigation ordinance, such that the landlord must pay the higher 2005 mitigation payment rather than the lower 2014 mitigation payment.  *See* Trial Ex. 28, at 28-3 ¶ 6, & at 28-124 – 28-125.  Plaintiffs do not challenge the 2005 mitigation payment requirement, under which payments will typically range from about $5,000 to about $15,000.  Trial Ex. 4 at 4-8.  This is only a small fraction of the value of a vacant unit in San Francisco.  In fact, the evidence before the Board of Supervisors showed that property owners roughly double the sales prices of their properties by evicting their tenants.  Trial Ex. 14 at 1.  Thus, any adverse economic impact on landlords from paying mitigation payments is dwarfed by the upside they can realize from evicting their tenants.  That is probably why many landlords

voluntarily pay five- and six-figure buyouts to tenants, even where Ellis Act restrictions on re-rental remain in place.  *See* Trial Ex. 29 at 29-3.

Even as to the carefully selected Plaintiffs who have brought this case, the evidence before this Court demonstrates that there is no significant economic impact on them from the 2014 Mitigation Ordinance.  For the Levins, the $117,000 payment they allege they are required to pay their tenant is about 6% of what they voluntarily paid for their property a few years ago, before the significant run-up in the real estate market, and for Park Lane, their alleged payment obligation is about 3% of what it paid for the building a few years ago.  *See* Dkt. 16 at 10-11.  Courts have previously held diminutions in value of more than 80% not to constitute regulatory takings.  *See MHC Financing*, 714 F.3d at 1127-28.  Because any diminution in value suffered by the Plaintiffs here is far smaller than in *MHC Financing*, they do not meet the first prong of the *Penn Central* test.  That is reason enough to reject any facial regulatory takings claim.  Furthermore, even if some landlords suffered a significant economic impact from application of the 2014 Mitigation Ordinance, that would not be reason to find a taking here because those landlords could seek relief under the Rent Board's administrative procedures for alleviating undue financial burdens caused by a tenant mitigation payment.

The second *Penn Central* factor is whether a regulation has interfered with a property owner's investment-backed expectations.  Here, too, no facial challenge can succeed.  The evidence before this Court, as noted above, shows that about 20% of landlords in the Rent Board's sample of Ellis notices will pay exactly the same amount of mitigation payment under the 2014 Mitigation Ordinance as they would have paid under the 2005 ordinance.  Trial Ex. 28, at 28-3 ¶ 6, & at 28-124 – 28-125.  Thus, in a significant number of cases where it applies, the 2014 Mitigation Ordinance interferes not one iota with economic expectations, because the landlord pays exactly the same amount to a displaced tenant as he or she would have paid under the prior ordinance.  This defeats any facial regulatory taking claim.  Moreover, even for landlords who are subject to increased payments, there is no regulatory taking.  Raising the price of a known payment is not the kind of interference with expectations that courts recognize as supporting a taking claim.  *Concrete Pipe & Prods. of Cal., Inc. v. Const. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 645 (1993) ("[T]hose who do business in a regulated field

cannot object if the legislative scheme is buttressed by subsequent amendments to achieve the legislative end.") (internal quotation marks and citation omitted).

The third *Penn Central* factor is "the character of the governmental action. A 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." *Penn Central*, 438 U.S. at 124 (internal citation omitted).  Here, the payment obligation is not a physical invasion but instead an adjustment of an existing mitigation-payment obligation.  Nor is it an answer to say that this ordinance is like a physical invasion because landlords must suffer the continuation of tenants' rent-controlled tenancies if they refuse to make a required mitigation payment.  The Ninth Circuit has held that a modification of an existing rent control ordinance, which reduced the amount of rent increases landlords could charge to mobile home tenants, is not akin to physical invasion even though it regulates possessory interests, but instead is a mere economic regulation.  *MHC Financing*, 714 F.3d at 1128.  Under *MHC Financing*, the City's modification of its rent control ordinance to increase landlords' mitigation payments and reduce their returns is similarly not a physical invasion.

None of the three *Penn Central* factors favor Plaintiffs.  This Court should find that the 2014 Mitigation Ordinance does not work a regulatory taking on its face.

Dated:  October 3, 2014

DENNIS J. HERRERA
City Attorney
WAYNE SNODGRASS
CHRISTINE VAN AKEN
Deputy City Attorneys


By:   /s/*Christine Van Aken*
        CHRISTINE VAN AKEN

Attorneys for Defendant CITY AND COUNTY OF SAN FRANCISCO