IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL LEVIN, ET AL., | No. 3:14-cv-03352-CRB |
| Plaintiffs, | **ORDER DENYING MOTION FOR RELIEF FROM JUDGMENT** |
| v. | |
| CITY AND COUNTY OF SAN FRANCISCO, | |
| Defendant. | |

More than two years ago, the Court held that an ordinance enacted by the City and County of San Francisco ("the City") was unconstitutional. See generally Mem. & Order (dkt. 92). While appealing that decision, the City amended its ordinance, mooting the appeal. See USCA Mem. Dispo. (dkt. 127) at 2. The Ninth Circuit then remanded the case for this Court to decide, in the first instance, whether its judgment against the City should be vacated as a result.[1] Id. at 3.

To make that decision, the Court must first determine whether the City's own voluntary action mooted this case. See Chemical Prod. & Distrib. Ass'n v. Helliker, 463 F.3d 871, 879 (9th Cir. 2006). If the answer is yes, the Court may decide, in its discretion, whether the equities counsel in favor of vacatur. See id. at 878; see also Am. Games, Inc. v. Trade Products, Inc., 142 F.3d 1164, 1168 (9th Cir. 1998); Blair v. Shanahan, 38 F.3d 1514, 1521 (9th Cir. 1994). If the answer is no, the Court has little choice but to vacate the judgment. Helliker, 463 F.3d at 878; see also United States v. Munsingwear, Inc., 340 U.S. 36, 39–40 (1950).

---

[1] The Court has authority to consider the City's request for vacatur under Federal Rule of Civil Procedure 60(b). U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship, 513 U.S. 18, 29 (1994).

**I.**

The "principal condition" on which vacatur turns is whether mootness was caused by happenstance or by voluntary action of the losing party. U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership, 513 U.S. 18, 24–25 (1994); accord Dilley v. Gunn, 64 F.3d 1365, 1370 (9th Cir. 1995). This is because a party "who seeks review of the merits of an adverse ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced to acquiesce in the judgment." Bancorp, 513 U.S. at 25 (citation omitted). "The same is true when mootness results from unilateral action of the" prevailing party. Id. (citing Walling v. James V. Reuter, Co., Inc., 321 U.S. 671, 675 (1944)). Either way, the "established practice" is to vacate the judgment. Id. at 22–23 (quoting Munsingwear, 340 U.S. at 39). But when mootness results from voluntary action of the losing party, the adverse judgment "is not unreviewable, but simply unreviewed" by choice. Id. Vacatur, as a result, becomes a matter of discretion. See id. at 29.

The script flips again when one branch of government moves to vacate an adverse judgment after voluntary action of another branch has mooted the case. See Helliker, 463 F.3d at 879. These cases tend to follow a pattern: the legislature causes mootness by amending or repealing a law that the executive had been sued for enforcing—and then the executive moves to vacate the adverse judgment. When that happens, courts treat the executive as being "in a position akin to a party who finds its case mooted on appeal by happenstance, rather than events within its control." Nat'l Black Police Ass'n v. Dist. of Columbia, 108 F.3d 346, 353 (D.C. Cir. 1997). The legislature, after all, "may act out of reasons totally independent of ending the lawsuit" or "because the lawsuit has convinced it that the existing law is flawed." Id. at 352. So, without more, courts do not assume that the legislature acted simply to bail out the executive. Id.; accord Am. Library Ass'n v. Barr, 956 F.2d 1178, 1187 (D.C. Cir. 1992) (noting that Congress might have sought to "repair what may have been a constitutionally defective statute, which "represents responsible lawmaking, not manipulation of the judicial process"). Vacating the judgment thus becomes the "established practice" once more. See, e.g., Helliker, 463 F.3d at 878–79 (vacating judgment

against state executive official after state legislature mooted case by passing statute preempting challenged law and accompanying state administrative regulations); Log Cabin Republicans v. United States, 658 F.3d 1162, 1165, 1168 (9th Cir. 2011) (per curiam) (vacating judgment against the federal government and federal executive officials after Congress mooted case by repealing "Don't Ask, Don't Tell"); Khodara Envtl., Inc. ex rel Eagle Envtl., L.P. v. Beckman et al., 237 F.3d 186, 192, 195 (3d Cir. 2001) (Alito, J.) (vacating judgment against state and federal executive officials after Congress mooted case by amending statute governing construction of landfills); Valero Terrestrial Corp. v. Paige, 211 F.3d 112, 121 (4th Cir. 2000) (vacating judgment against state executive officials after state legislature mooted case by amending statute governing disposal of toxic waste).

This "principle that legislation is attributed to the legislature alone is inherent in our separation of powers."[2] Helliker, 463 F.3d at 789. Separation of powers, in turn, is inherent in our structure of federal and state governments. To state the obvious: the Constitution divides the federal government into three separate and independent branches. See U.S. Const. art. I, § 1 ("All legislative powers herein granted shall be vested in a Congress of the United States . . . ."); id. art. II, § 1 ("The executive power shall be vested in a President of the United States of America . . . ."); id. art. III, § 1 ("The judicial power of the United States, shall be vested in one Supreme Court, . . . ."). To state the less obvious: although the Constitution does not require the same of state governments, see Dreyer v. Illinois, 187 U.S. 71, 84 (1902), it presumes that they will at least have separate legislative and executive branches. The Domestic Violence Clause requires the federal government to protect states

---

[2] The City maintains that separation-of-powers principles and the presumptive legitimacy of legislative actions are two separate and independent reasons for ordering vacatur here. See Mot. at 11; Reply at 1. Not necessarily. Although legislative actions are presumptively legitimate, Black Police Ass'n, 108 F.3d at 353, so are executive actions, United States v. Armstrong, 517 U.S. 456, 464 (1996). Nevertheless, the Ninth Circuit has refused to vacate judgments against executive officials whose own voluntary action caused mootness. See Cammermeyer v. Perry, 97 F.3d 1235, 1239 (9th Cir. 1996). And it has done the same for at least one lesser public body, albeit in an unpublished opinion. See 99 Cents Only Stores v. Lancaster Redevelopment Agency, 60 F. App'x 123, 125 (9th Cir. 2003). Indeed, if the presumptive legitimacy of government action alone warranted vacatur whenever government action caused mootness, there would be no reason to discuss separation of powers. But courts consistently do just that, so here that presumption is best understood as merely a supporting rationale for treating distinct branches of government as distinct actors.

3

against internal unrest "on the Application of the [State] Legislature or of the [State] Executive (when the Legislature cannot be convened)." U.S. Const. art. IV, § 4; see also Luther v. Borden, 48 U.S. 1, 43 (1849) (noting that, to act on such an application, the President must first determine what "body of men" is the state's rightful legislature and what person is the state's rightful governor). No wonder, then, that this union of fifty states has fifty state legislatures and fifty state governors.

The City maintains that separation-of-powers principles apply here in a "practical sense" because San Francisco's governmental structure places different powers in different hands. See Mot. at 11. The City elects a Board of Supervisors that may act only by ordinance and is expressly forbidden from interfering in administrative affairs.[3] See S.F. Charter §§ 2.101, 2.105, 2.114. Its mayor serves as a "chief executive officer" tasked with enforcing the law. Id. § 3.100.

The City's system, however, is only one of countless ways in which lesser public bodies arrange their affairs. San Jose vests "[a]ll powers of the City" in a city council that, like San Francisco's Board of Supervisors, may only act "by ordinance." S.J. Charter §§ 400, 600. But, rather than holding elections to select an executive officer, the city council appoints a city manager to handle day-to-day operations. Id. §§ 700–01. Portland, for its part, allows its city council to exercise its array of powers by whatever means, save delegating legislative functions. See Portland (Oregon) Charter § 2–104. Both San Jose and Portland also elect a mayor who, unlike in San Francisco, serves on the city council. See S.J. Charter §§ 500–01; Portland Charter §§ 2–102, 3–101. And these are just two contrasting examples—from major cities to boot.

The City's position would thus force courts to examine town charters on a case-by-case basis to determine whether any particular lesser public body has sufficiently separated powers to warrant vacatur as a matter of course. That would be exceedingly

---

[3] San Francisco's charter also stresses that "[a]ll legislative acts shall be made by ordinance," S.F. Charter § 2.105, suggesting that the Board performs at least some non-legislative acts.

4

difficult.[4] But even if wading into those murky waters had more practical appeal, there remains ample reason to doubt whether any lesser public body seeking vacatur stands in the same shoes as the federal government and the states, however it structures its affairs.

The Supreme Court's cases on sovereign immunity and 42 U.S.C. section 1983 ("Section 1983") provide something approaching The Standard Model of the governmental universe. And those cases suggest that, unlike the federal government and the states, the City is an ordinary litigant. The federal government enjoys sovereign immunity "save as it consents to be sued." United States v. Mitchell, 445 U.S. 535, 538 (1980) (quoting United States v. Sherwood, 312 U.S. 584, 584 (1941)). States presumptively enjoy the same, Alden v. Maine, 527 U.S. 706, 713 (1999), and are not "persons" under Section 1983 because that term does not normally extend to sovereigns, Will v. Michigan Dep't of State Police, 491 U.S. 58, 64 (1989).[5] But for lesser public bodies like the City, the opposite is true. They do not enjoy sovereign immunity, Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977), and are indeed "persons" under Section 1983, Monell v. Dep't of Social Services of New York, 436 U.S. 658, 690 (1978).[6]

Bottom line: the privilege that the City seeks seems reserved for sovereigns. At least two circuits, for that matter, have held that a judgment against a city need not be vacated when the city repeals a challenged law—and so held without regard to its governmental structure. See Houston Chronicle Pub. Co. v. City of League City, Tex., 488 F.3d 613, 619 (5th Cir. 2007) (solicitation ordinance); 19 Solid Waste Dep't Mech. v. City of Albuquerque,

---

[4] Administrative agencies with mixed legislative and executive functions might create similar difficulties. See Bancorp, 513 U.S. at 25 n.3; accord Helliker, 463 F.3d at 880. Mercifully, there is no need to grapple with those difficulties here.

[5] Section 1983 provides a private right of action against any person who, under color of state law, deprives another of a federal right. See 42 U.S.C. § 1983. So, by its terms, the statute does not apply to the federal government or federal officials. See Bivens v. Six Unknown Named Agents, 403 U.S. 388, 406 (1971).

[6] Tribal governments, for their part, are sovereigns. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978) (noting that tribal governments presumptively enjoy sovereign immunity). Unlike the federal government and the states, tribal governments are under no expectation to adhere to separation-of-powers principles, though many tribes have done just that. See, e.g., Yavapai-Apache Nation Const. art. III ("The Yavapai-Apache government shall be divided into three (3) separate and independent branches of government . . . .").

76 F.3d 1142, 1144–45 (10th Cir. 1996) (drug testing policy). The Court likewise concludes that the City's voluntary action mooted this case. It will therefore proceed to the equities.[7]

**II**

When weighing the equities, the Court must balance "the competing values of finality of judgments and right to relitigation of unreviewed disputes," as well as any "consequences and attendant hardships" that might result. Am. Games, 142 F.3d at 1168 (quoting Ringsby Truck Lines, Inc. v. Western Conf. of Teamsters, 686 F.2d 720, 722 (9th Cir. 1992)).

The City stresses that it is not trying "to have its cake and eat it too" because it has scrupulously abided by the terms of injunctions issued here and in state court, and because it urged the Ninth Circuit to reach the merits on appeal. Mot. at 13; see also Dilley, 64 F.3d at 1372 n.6 (noting that it may weigh equitably in favor of vacatur if the party seeking it did not seek to avoid appellate review). The City also observes that both the original and amended ordinance "are now a dead letter on independent state law grounds," making this Court's constitutional holding unnecessary.[8] Id. at 13–14; see also Coyne et al. v. City and County of San Francisco (dkt. 133–11) at 1 (holding that California's Ellis Act preempts both ordinances); Black Police Ass'n, 108 F.3d at 354 (noting that, at least in the D.C. Circuit, avoidance of constitutional questions counsels in favor of vacatur).

---

[7] The City cites both In re City of El Paso, 887 F.2d 1103 (D.C. Cir. 1989), and Nat'l Black Police Ass'n v. Dist. of Columbia, 108 F.3d 346 (D.C. Cir. 1997), as examples of courts vacating "adverse decisions against a local government where the local government has amended a challenged law or otherwise created mootness." Mot. at 10. But those cases are not persuasive here—and not just because neither decision is binding. Though it ordered vacatur, the former case expressly acknowledged that the City of El Paso "contributed to the occurrence of mootness on appeal" after losing in district court. In re El Paso, 887 F.2d at 1106. The latter case, meanwhile, concerned the District of Columbia, which is far from the average local government (to the extent that term applies at all). Although the nation's capital has its own legislative body, Congress retains ultimate authority over its affairs. See U.S. Const. art I, § 8, cl. 17. The District presumptively enjoys sovereign immunity, see Blue v. District of Columbia Public Schools, 764 F.3d 11, 14 (D.C. Cir. 2014), but is also considered a "person" under Section 1983, see Baker v. District of Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (noting that Monell claims lie against the District). And if that were not sui generis enough, the District sends delegates to the Electoral College like each of the fifty states. See U.S. Const. amend. XXIII.

[8] This reality also suggests that the City's fears of collateral consequences are overstated. See Ford v. Wilder, 469 F.3d 500, 506 (6th Cir. 2006).

6

Fair enough, but not enough. Let's have no illusions about what happened here. The City tried to repair some (but not all) of the original ordinance's constitutional infirmities—and successfully requested a stay of the appeal to make those repairs. The City then sought review of the amended ordinance, which by its very design would have presented a closer question on the merits. Now, after being denied review, the City seeks vacatur based on mootness that it itself caused. The Court sees no equitable reason to reward litigants for attempting to hedge their bets.

What is more, judicial precedents are "presumptively correct and valuable to the legal community as a whole." Bancorp, 513 U.S. at 26–27. They require "the investment of judicial resources," Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Seafirst Corp., 891 F.2d 762, 765 (9th Cir. 1989), while parties incur the "considerable expense" of litigation in the process of obtaining them, see, e.g., Visto Corp. v. Sproqit Tech., Inc., case no. 04-cv-0651-EMC, 2006 WL 3741946, at *7 (N.D. Cal. 2006). Judgments, in short, are not to be set aside lightly. This case is no different.[9]

Finally, there might be an unspoken undercurrent flowing through the instant dispute: attorney's fees. See Compl. (dkt. 1) at 25 (seeking fees under 42 U.S.C. section 1988). Because the Court entered judgment in their favor, Plaintiffs are likely "prevailing parties" entitled to fees even though the case became moot on appeal—at least as things stand now.[10] See Higher Taste, Inc. v. City of Tacoma, 717 F.3d 712, 717 (9th Cir. 2013); UFO Chuting of Hawaii, Inc. v. Smith, 508 F.3d 1189, 1197 & n.8 (9th Cir. 2007). But vacating the judgment might invite the argument that doing so doomed any forthcoming effort to recover attorney's fees. See Lewis v. Continental Bank Corp., 494 U.S. 472, 480 (1990) ("An order

---

[9] The City argues that the "same or greater" investment of time and resources in Log Cabin Republicans v. United States, 658 F.3d 1162 (9th Cir. 2011), blunts the force of these considerations here. See Reply at 6. Not so. The Ninth Circuit ordered vacatur in that case because Congress repealed the challenged statute, mooting a case against the executive branch. See Log Cabin Republicans, 658 F.3d at 1167–68. The district court, therefore, had no occasion to weigh the equities in the manner prescribed here.

[10] The Court stayed its injunction for three days, but three days only. See Mem. & Order at 24. So this is not a case where Plaintiffs fall short of being prevailing parties for having failed to obtain a "direct benefit" from the judgment. See UFO Chuting, 508 F.3d at 1198.

7

vacating the judgment on grounds of mootness would deprive [the plaintiff] of its claim for attorney's fees . . . ."). But see Williams v. Alioto, 625 F.2d 845, 847–48 (9th Cir. 1980) (per curiam) (holding that plaintiffs were "prevailing parties" under 42 U.S.C. section 1988 despite "dismissal of the appeal as moot and vacation of the district court judgment"); UFO Chuting, 508 F.3d at 1198 (citing Williams favorably). Those fees are a crucial incentive for civil-rights plaintiffs, who are "the chosen instrument of Congress to vindicate 'a policy that Congress considered of the highest priority.'" Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n, 434 U.S. 412, 418 (1978) (quoting Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 402 (1968)). So while resolving whether Plaintiffs are entitled to fees is a question for another day, the Court is loathe to risk burying an inadvertent dagger in their chances.

\* \* \*

For the foregoing reasons, the Court DENIES the City's motion for relief from judgment and, pursuant to Civil Local Rule 7–1(b), does so without oral argument. Accordingly, the Court VACATES the hearing set for June 9, 2017.

**IT IS SO ORDERED.**

Dated: May 30, 2017

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE